**NEBLETT et al. v. BUTLER et al.**
No. 11349.

Court of Civil Appeals of Texas. Galveston.
April 9, 1942.

Rehearing Denied May 14, 1942.

W. P. Neblett, of Houston, in pro per.
Walter F. Brown, of Houston, for appellant W. P. Neblett.

Lewis & Knipp and Ernest A. Knipp, all of Houston, for appellees Mrs. Iva K. Allen, Jno. Allen and Carolyn Crawford, a non compos mentis.

Andrews, Kelley, Kurth & Campbell and Homer Mabry, all of Houston, for appellees Mrs. Inez Buvens and others.

W. J. Knight, of Houston, for appellees B. A. Bell, Sr., and others.

CODY, Justice.

This is a consolidated suit, consisting of a suit instituted by appellant W. P. Neblett, and one which was instituted by appellee Inez Buvens. Mr. Neblett and Mrs. Buvens are independent executors under the will of Robert Griffin, deceased. In the pleading, upon which he went to trial, Mr. Neblett sought to have the aforesaid will construed, to recover the amount of a premium which he was required by the probate court to take out, to recover office rent in the sum of $25 per month, as justly due by the estate to him, and attorney's fees in the sum of $10,000; also he sought an order to distribute and partition the property of the estate.

The facts, as found by the court in response to appellant's motion therefor, are substantially as follows:

Robert Griffin, the testator, died on January 5, 1937, at the age of 84. His will was probated February 2, 1937. Mrs. Buvens had served testator as his private secretary; he was distantly related to her by marriage, and had resided at her home. Appellant was testator's attorney, and was intimately acquainted with his affairs, and had prepared testator's will, together with the codicil; and he also attended to having the will probated. Appellant assisted in preparing the estate tax return, and the inheritance tax return (for the State), and the inventory and appraisement; these were not complicated as testator was a bachelor. The court lists some minor services, such as the preparation of sets of papers covering the sale of two houses belonging to testator's estate, and the preparation of assignments of vendor's lien notes from the testator's estate to various clients of appellant, and the foreclosure of a deed of trust, and the substitution of parties in a suit after testator's death, and the taking of a default judgment, and an execution sale. The court estimated the reasonable value of such legal services, including that of probating the will, to be $250. He found that Mrs. Buvens and her daughter had assisted in preparing the estate tax and the inheritance tax returns, and the inventory and appraisement. Mrs. Buvens' daughter, by agreement of Mrs. Buvens and appellant, served as bookkeeper for testator's estate, and was paid a salary. The appraised value of the estate was about $125,000, and consisted of real estate, secured notes, stocks and cash. Practically all rents were collected through real estate agents to whom the customary commissions were paid. At the start appellant kept part of the estate's money in his personal checking account, and frequently had on hand less money than he should have had to cover the funds which he had collected which belonged to the estate. Mrs. Buvens insisted that appellant pay over to and deposit in the account of the estate the money belonging to the estate. Appellant agreed to do so provided he was paid $1,500 for legal services rendered the estate. Mrs. Buvens declined, but upon appellant's assurance that the matter should be handled as an advancement on executor's fees agreed that $1,500 should be advanced to appellant and $1,500 to herself as advance payment of such fees. Subsequently, upon advice of counsel, Mrs. Buvens repaid the estate the $1,500 which had been advanced to her. Within a few months it became necessary for Mrs. Buvens to have advice of counsel to represent her as executrix,

and employed Andrews, Kelley, Kurth & Campbell, who have represented her ever since. The court further found that on May 31, 1937, appellant wrote the various legatees: "I claim $10,000.00 attorney's fees. The Federal Government allowed it but Mrs. Buvens is not willing to take the responsibility of allowing such a large fee and I will have to go into the District Court unless you all are willing to allow me at least $7,200.00. This includes my services as active manager of the Estate, office rent, phone, etc., and must be payable monthly. My office has always been Mr. Griffin's office and I do not feel in the least bashful in setting the fee at $7200.00, because it is largely due to my efforts that the Estate is what it is." Appellant filed suit on June 22, 1937, seeking to recover $10,000 attorney's fees for himself for representing the estate, and in the suit sought a construction of the will. And the court further found that the first of the two codicils provided that Miss Ira K. Condrey should be paid $5,000 promptly; that Mrs. Buvens desired to have this bequest paid, but appellant opposed its payment on the ground that he should first be paid his claimed attorney's fees. On July 26, 1937, the probate court ordered appellant to give bond under article 3439, Vernon's Annotated Texas Civil Statutes. Two days thereafter he gave bond in the sum of $266,000, the premium on which amounted to $864. On August 4, 1937, appeal from said order to the district court was perfected, and the order was there reversed; while the appeal was pending there was no liability on the aforesaid bond, but appellant made no effort to cancel the bond.

The court further found that there was no occasion to file suit to construe the will, that there had been no dispute between the interested parties as to the construction of the will, and no dispute between the executor and executrix and the beneficiaries under the will as to its construction. The court found that appellant did not file the suit in good faith, but for the purpose of collecting attorney's fees, and to coerce his co-executrix and the beneficiaries under the will to pay the amount he claimed in the suit. That the obligations imposed on appellant as executor necessitated no additional office space or help, and his claim for reimbursement for office space and telephone rent is ill founded. That under the provisions of the will each of the executors would receive for their services the sum of $6,700; and each of the executors was bequeathed a legacy of $5,000.

The court found that the employment of Andrews, Kelley, Kurth & Campbell by Mrs. Buvens was necessary, and that a reasonable fee for their services is $1,250; and that a reasonable fee for the services of Walter F. Brown for representing appellant as independent executor is $750. That Miss Crawford, a non compos mentis, a beneficiary under the will, required to have an attorney and guardian ad litem, and Ernest A. Knipp was so appointed and has rendered valuable service, and a reasonable fee for such service by Mr. Knipp is $500. That B. A. Bell, Jr., was a nonresident minor, and W. J. Knight has been appointed and has served as attorney and guardian ad litem for said minor, the reasonable fee for such service by Mr. Knight is $500.

The court further found that all of the beneficiaries were alive at the time this case was tried except Elbert J. Crawford, who died after testator's death, and left surviving him his wife, four sisters, and his mother—after his death, his mother died leaving as her only heirs the four sisters of Elbert J. Crawford.

From the judgment and order entered by the court, Mr. Neblett has appealed in his individual and in his representative capacity, and has filed a brief and reply brief here in his individual capacity; he is represented in his capacity as executor by Mr. Brown, who has filed an original brief and a reply brief.

We have had too many briefs filed on behalf of appellant and on behalf of Mrs. Buvens on this appeal. Presenting an appeal by piecemeal or by separate briefs for the same parties, which overlap, tends to confusion in their consideration. For the sake of convenience and brevity, and to enforce clarity at the expense of accuracy, lawyers sometimes indulge the license of speaking of the estate of a deceased person as though it constituted a legal entity, and possessed rights and owed duties. Actually, of course, upon a man's death his property passes, if he dies testate, to his legatees, subject to administration by his personal representative. An estate, therefore, cannot sue; an estate cannot appeal; it cannot file a brief. But we have not required any rebriefing as the new rules at present have tended to some uncertainty; and we have fully considered the briefs. We cannot, however, treat the

various points raised in the various briefs separately.

■ The trial court correctly ruled that there was no need to construe the will upon the various points raised by appellant in his pleading. "It is well settled that a suit for the construction of a will will not be entertained where there exists no necessity for a judicial construction thereof, 69 C.J., § 1987, p. 866; and a bill for the construction of a will must allege all facts and circumstances necessary to entitle plaintiff to relief, 69 C.J., § 2026, p. 886." White v. Hebberd et al., Tex.Civ. App., 89 S.W.2d 482, 487.

We are unable to see the difficulty in construing paragraphs XXII and XXV which is proposed by appellant. These two paragraphs, so far as is here relevant, read:

XXII. "* * * For services so rendered by my Executors, I give and bequeath to each of them Ten per cent (10%) of the residue of my estate and whatever remains of the said residue after the deduction of the said twenty per cent (20%), I give and bequeath to all of the other legatess herein, the said remainder in proportion that each share herein given bears to the total bequests contained to paragraphs two to twenty-one, inclusive; but if any of said legatees be dead the then remainder of said residue shall be divided between the living legatees under this will, * * *."

XXV. "In the event of the death of any of the legatees mentioned in paragraphs two to twenty-one, both inclusive, before having received his or her bequest, the amount of such bequest or bequests shall be equally divided between his or her nearest relatives; but this paragraph shall not be interpreted to change the wording and meaning of paragraph twenty-two above."

Paragraph XI reads: "To my friends, Elbert J. Crawford and wife Genevieve Crawford * * * I bequeath the sum of $1000.00."

■ The fact that Elbert J. Crawford died on April 28, 1937, could not result in rendering the provisions of the will which would have been clear had Elbert J. Crawford lived, ambiguous. He did not die until after his right in his bequest, both specified and residual, had vested. The only difficulty which could be brought about by the death of Elbert J. Crawford, after his rights under the will had vested, would be the difficulty of knowing to whom to deliver his legacy. If there were various claimants,

and the facts were such as to entitle the executors to interplead such claimants, the remedy would be a stakeholder's suit.

Was appellant entitled to recover attorney's fees for legal services which he, as attorney, rendered to and for the benefit of the estate? As appears above, the court found that appellant had rendered certain legal services for the estate, which did not exceed in value the sum of $250. In American Jurisprudence, Vol. 21, p. 532, it is stated: "In the absence of statute, the general rule is that where a lawyer becomes executor or administrator, his compensation as such is in full for his services, although he exercises his professional skill therein; and even if he performs duties which he might properly have hired an attorney to perform, he is not entitled to attorney's fee. The rule is one of public policy, grounded upon the principle that a trustee shall not place himself in a situation where his interests conflict with his duty as fiduciary."

In 11 R.C.L., p. 231, it is said: "It has been stated that if he (the executor) chooses to exercise his professional skill as a lawyer in the business of the estate, it must be considered a gratuity, and that to allow him to become his own client and charge for professional services, would be holding out inducements for professional men to seek such representative places to increase their professional business, which would lead to most pernicious results."

There is certainly very respectable authority for holding that executors cannot employ themselves to render legal services for the benefit of an estate.

■ However, strictly speaking, a personal representative does not have authority to bind an estate for legal service. Art. 3691, Vernon's Ann.Tex.Civ.Statutes, provides: "Executors * * * shall also be allowed all reasonable expenses necessarily incurred by them in the preservation * * * of the estate, and all reasonable attorney's fees, that may be necessarily incurred by them in the course of the administration." A personal representative owes the duty to preserve the estate, and expenses which he incurs in the performance of such duties he may recover. A prudent executor will only agree to pay an attorney, whom he employs, reasonable attorney's fees, for if the reasonableness of the fees is contested, the executor can only recover such as are reasonable. Whether an executor, who is a lawyer, performs the

services himself, or employs another, the reasonableness of the fees charged must stand the same test. So what difference could it make whether a lawyer-executor employs another lawyer, or performs the services himself? A testator chooses his executor because he thinks him trustworthy, and we think it unlikely the testator would not want the lawyer, to whom he intrusted the management of his estate, to be intrusted with the management of the law business incident thereto. And as already pointed out, he does not have to trust him to fix a fee that is not exorbitant, the law prevents that. We therefore question the soundness of a public policy which would tend to defeat a testator's desire to have his affairs, legal as well as business, attended to by his executor, by one he has learned to trust. However, our view seems to be against the weight of authority, and it is not necessary for us to pass upon the point. The judgment of the court below can be sustained upon the conclusion that in the instant case the trial court considered the fees allowed by the testator were generous and ample enough to, and were intended to, pay appellant for all his services. Appellant's fees, as shown above, were in excess of $6,000, and he was only one of the executors treated thus generously. From the findings of the court it appears that the duties of the executors were exceptionally light. The executor was bound to know that his affairs were such that such services would be more nominal than real and that the legal services would be correspondingly light. There was evidence before the court that a reasonable compensation for performing the legal services which appellant has performed would be $12,500. However, the question which was submitted to the attorneys included payment for services in connection with litigation which the court has found was unjustifiably brought about by appellant; and does not seem to have taken into consideration the provisions in the will in favor of appellant. "Inasmuch as it is not the policy of the law to allow liberal commissions to executors and administrators for settling estates of deceased persons and at the same time pay attorneys for doing the business, an executor or administrator who seeks an allowance of an attorney's fee must show that the expense was necessarily incurred in the court of the administration either for the services in a controversy or controversy between the estate and other persons, or for advice and assistance in administering the Estate. Wil-

liams v. Robinson, 56 Tex. 347, * * *." 14 Tex.Jur., .471. We overrule the point that the court erred in refusing to allow appellant any fees for his services. We likewise overrule the objection that the court erred in allowing $750 for the employment of Mr. Brown. By making such allowance the court concluded that the employment was necessary and the amount of the fee reasonable. A complicated situation had arisen, and the court's ruling thereon was clearly within his province, and we see no abuse of discretion. And in this connection we overrule appellant's contention that the allowance to the law firm of Andrews, Kelley, Kurth & Campbell in the sum of $1,250 was unreasonable. We likewise overrule the complaint that the allowance to the attorneys ad litem was excessive. Certainly it was necessary for the court to appoint such attorneys. While the value of interest which they represent is an element to be considered by the court, this is not decisive. We overrule the objections that $500 allowance to each of the attorneys ad litem was excessive.

We also overrule the point that the court erred in not permitting the recovery of the amount of the premium paid by appellant for the bond. At the most, appellant needed to be under bond only until he appealed to the district court. This was only a few days. We do not know for how long a time the bond covered, but certainly the sum paid out as a premium on the bond indicates that the protection thus procured was greater in excess of what was required. Whether appellant could have recovered from the insurance company the premiums or a great part thereof for the period during which there was no liability is not before us.

We come now to the matter of the payment to appellant of $1,500 advance payment against his executor's fees. We overrule the contention that appellant should be held liable for interest thereon at the rate of 10%. This advancement does not evidence any intention to misapply funds belonging to the estate. The estate was abundantly solvent, and owed appellant a legacy of $5,000 which it would in due course have to pay. The fact that the estate would have to pay appellant executor's fees greatly in excess of $1,500 was then clearly in sight. This prepayment was, under the facts of this case, a mere irregularity which could not hurt anyone interested in the estate, and was participated in by both

executors. While Mrs. Buvens has repaid such $1,500, as we understand the facts, the same result as to appellant has been accomplished by offsetting against the $5,000 legacy which was left appellant such advancement. Under the judgment rendered by the court appellant will get everything devised to him by the will, and the estate will lose nothing by the advance payment. The points seeking to reverse the action in connection with the $1,500 prepayment are overruled.

We have carefully examined the findings of the facts made by the trial court and these, together with the presumptions which must be indulged in support of the court's judgment, fully sustain the court's judgment. We therefore affirm the judgment.

Affirmed.

On Appellants' Motion for Rehearing.

In response to our invitation to answer appellants' request for additional findings of fact and conclusions of law appellees have filed such answers which convince us that appellants' request should be refused.

Appellants' motion for rehearing and request for additional findings of fact and conclusions of law is accordingly refused.

Motion refused.