**CITY OF SANTA ANNA v. LEACH.**

No. 2372.

Court of Civil Appeals of Texas. Eastland.

May 14, 1943.

Rehearing Denied June 11, 1943.

E. M. Critz, of Coleman, for appellant.

Baker & Baker, of Coleman, for appellee.

FUNDERBURK, Justice.

William O. Leach sued the City of Santa Anna to recover $1,619.33, alleged to be due the plaintiff for engineering services performed for defendant on a WPA and a lake road project. The defendant, in addition to joining issues upon the allegations of plaintiff's petition, alleged a different contract of employment, according to the terms of which defendant, having paid the sum of $175, owed plaintiff nothing.

In a jury trial there was a verdict for plaintiff in the sum of $610.11, which, less $175, acknowledged to have been paid, formed the basis for a judgment for plaintiff awarding him recovery of $435.11.

The defendant has appealed.

The points upon which the appeal is predicated cannot be satisfactorily discussed, it seems to us, without some preliminary consideration of the nature of the cause of action, or causes of action, if more than one, and the relation of same to the issues submitted and the verdict returned thereon.

Plaintiff's petition alleges an express contract. One provision of such contract was the promise of defendant "to pay this Plaintiff his usual and customary fees for such [engaged] services." It is probably true that the evidence failed to raise issues upon some of the essential elements of such cause of action. For example, no witness testified to the effect that any representative of defendant expressly promised to pay plaintiff "his usual and customary fees" for the services agreed to be performed by him. However, we find it unnecessary to express any definite opinion upon this point, because, other than the allegations of an express contract, plaintiff alleged his employment as an engineer by defendant; his performance of services; the acceptance thereof by defendant, and the reasonable value of such services. In other words, plaintiff's petition alleged facts sufficient to authorize recovery upon an implied contract to pay the reasonable value of such services. We think it evident that the verdict of the jury related to the alleged *implied* contract. Under allegations of the express contract, the reasonable value of plaintiff's services was not tendered as an issue, and was immaterial. Instead, the issue tendered was whether defendant promised to pay "plaintiff his usual

and customary fees" for said services. Under that issue it was immaterial whether plaintiff's usual and customary fees were reasonable or not. Their reasonableness was presumably concluded by the alleged unqualified promise to pay same.

In our opinion there was evidence sufficient to raise issues of fact upon all the essential elements of plaintiff's cause of action upon implied contract.

There was no conclusive evidence that defendant ever unqualifiedly accepted plaintiff's offer (if any) to do the work for a stated price. The Mayor (Johnson) as a witness, having testified to the terms of the offer made by plaintiff, was asked: "And you told him to go ahead?" His answer was: "No, we did not tell him then; we told him we would take it up and see about it." True, there is testimony suggesting that the Mayor may have *thought* that he subsequently accepted plaintiff's offer or intended to do so, but there is also testimony indicating plaintiff did not so understand it. For example, note the following testimony by plaintiff: "We started out of the office and I had all of these documents with me, and I told Mr. Johnson before we left, and I said: 'Before we go over there [to San Angelo] I am not going to do this work for any paltry sum of money', and he said: 'We will take care of that. We will do what is right about it'." The jury, we think, under the evidence was warranted in believing that up to that time there had been no meeting of the minds of the parties involving an acceptance of the plaintiff's offer, and that what was done thereafter was in view of the assurance that the city would do what was right about it.

■ A reading of the statement of facts convinces us that there was evidence tending to show the reasonable value of the services to be the amount claimed—$1,619.-33. The fact that the jury found the amount to be $610.11 is well accounted for by the fact that plaintiff, time and again, presented his bill for that amount. We are not impressed with the contention of appellee that the bills were rendered as an offer of compromise. Plaintiff failed to show that prior to the presentment of the bills, there was any dispute between the parties. The fact that plaintiff was greatly in need of money, and may have been willing to accept the amount stated, although he considered he was entitled to more, does not, in our opinion, render evidence of the fact incompetent that he voluntarily valued his services at $610.11.

■ The jury's finding of $610.11 is, in our opinion, not subject to challenge on the ground that it was not in conformity with any of the evidence. There was evidence that 3% of the cost of the project was reasonable. As said, this would have amounted to about $1,619.33. The jury evidently reached the conclusion that $610.-11 was reasonable, because, otherwise plaintiff would not have submitted a statement showing that such was the amount claimed to be due.

■ In the approved plans, prepared by plaintiff, and approved by Mayor Johnson, was a claim of $1,200 for engineering services. The Federal Government was supposed to contribute to the financing of the project on the basis of three to one. Counsel for defendant in argument made a statement to the effect that he never saw a fairer man on the witness stand than Mr. Johnson, Mayor of Santa Anna. In the closing argument counsel for plaintiff, replying to said argument of counsel for defendant, stated to the jury, and repeated said statement, to the effect that the witness, George M. Johnson, Mayor of the City of Santa Anna, had defrauded the government out of $3,600, meaning three times the claim of $1,200 for engineering fees. No objection was made at the time, and the court took no action in reference to such argument. The inaction of the court, or, in other words, the failure of the court, on his own initiative, to instruct the jury not to consider said argument was made a ground of appellant's motion for new trial, and is the subject matter of one point urging error of the court in overruling the motion for new trial.

The basis of this argument was a matter in the record. The Mayor was contending in effect that the agreed value of the services was $175. The plaintiff was contending for $1,619.33. Each was rather grossly at variance with the estimated $1,200. If the Mayor was right, then undoubtedly, we think, the inclusion of $1,200 as the basis for procuring funds from the Federal Government on a ratio of three to one was, to say the least, not beyond criticism. However, it was apparent from all the evidence that any blame chargeable to Johnson would also be chargeable to plaintiff. On the whole, it does not appear to us that the argument, whether justified or not,

was any more calculated to injure the defendant than the plaintiff. If, as contended by plaintiff, the reasonable value of the engineering services was $1,619.33, the jury was not likely to be impressed with a charge that the Mayor was guilty of fraud in including in the estimate engineering services in the value of $1,200. On the other hand, if the Mayor was right, that the cost of engineering services had already been fixed by the terms of a contract, in which the total would not exceed $350, then it seems to us it was a proper subject of comment that the Mayor had approved an estimate fixing the value of such services at $1,200 as the basis of procuring funds on a ratio of three to one. On the whole, we think we are not warranted in presuming that the argument was prejudicial to the defendant.

There was no error, we think, in the action of the court in admitting plaintiff's later statement of the amount claimed to be due for the services rendered. If so, it was not of a character calculated to prejudice the defendant. The substance of the statement was set out fully in plaintiff's petition which presumably was read to the jury. The issues in the case as pleaded and tried in relation to the amount claimed by plaintiff, makes it fairly certain, we think, that the jury did not consider the statement itself as any evidence supporting the claim. On the other hand, it is fairly evident that they did give effect to the earlier statements specifying $610.11 as the amount due.

In a supplemental brief, appellant assigned as fundamental error "that the pleadings of the Plaintiff do not state any cause of action, in that it did not appear therefrom that at or before the alleged contract sued upon herein, that the City of Santa Anna had complied with the requirement of the Constitution of the State of Texas, Art. 11 Sections 6 [5] and 7 [Vernon's Ann.St.] requiring that such contract should not be made without, at the same time, a provision being made for levying and collecting a sufficient tax to pay the same * * *." The succeeding clause in the assignment of error as above quoted is: "there being no *testimony* herein presenting any such claim that such constitutional provisions were complied with." (Italics ours.)

This last clause may, we think, be dismissed with the suggestion that a question of "no testimony" does not involve fundamental error.

The assignment of fundamental error suggests a preliminary question of our authority to consider it. The question is whether, in a case like this, in which a motion for new trial is required as a prerequisite to an appeal, and constitutes the assignments of error upon appeal (Rule 374), the Court of Civil Appeals now (since the adoption of Texas Rules of Civil Procedure) is authorized to consider "fundamental error" not presented in the motion for new trial?"

Since our earliest judicial history, two kinds of "errors in law" have been recognized. In 1850 the Legislature enacted a statute requiring the appellant or plaintiff in error in all cases to file with the clerk of the trial court an assignment of errors to be made a part of the record, and providing "that all errors not so distinctly specified shall be considered by the Supreme Court as waived." Paschal's Digest, Art. 1591. This statute, while purporting to apply to all errors, was not held to limit the jurisdiction of the Supreme Court to consideration of errors only so assigned. The reason was that the power to pass upon other errors existed by virtue of another statute. Paschal's Digest, Art. 1581. That article provided that the trial in the Supreme Court should, among other things, be on "an error in law either assigned *or apparent on the face of the record.*" (Italics ours.) Following the constitutional amendment creating Courts of Civil Appeals, the last-named statutory provision was made applicable to Courts of Civil Appeals, instead of the Supreme Court, as formerly. R.S.1895, Art. 1014; R.S.1911, Art. 1607; R.S.1925, Art. 1837.

An "error in law * * * apparent upon the face of the record" became also known as a *fundamental* error. That the jurisdiction of a Court of Civil Appeals to pass upon *fundamental* errors, or errors apparent upon the face of the record, in the absence of any assignment of errors, existed only by virtue of said statute (R.S. 1925, Art. 1837) was in effect declared by the Supreme Court in Link v. City of Houston, 94 Tex. 378, 59 S.W. 566, and Scalfi & Co. v. State, 96 Tex. 559, 74 S.W. 754. See, also, Schaff v. Mason, 111 Tex. 388, 235 S. W. 520.

Under these decisions the Supreme Court had no jurisdiction to disturb a judgment of a court of civil appeals, because of fundamental error, unless such error be presented (assigned) in the petition for writ

of error, and not even then unless it be made to appear in the application that the action of the court of civil appeals with reference to such error was complained of in the motion for rehearing in that court.

Since, as it thus appears, the sole authority of courts of civil appeals to reverse judgments of trial courts upon "error in law", although not assigned, but "apparent on the face of the record", was said Art. 1837, it remains to consider whether such authority by virtue of said statute or any other statute or rule exists at this time.

■ House Bill 108 of the 46th Legislature, p. 201, Vernon's Ann.Civ.St. Art. 1731a, in Section 1 provided that "all laws and parts of laws governing the practice and procedure in civil actions are hereby repealed, such repeal to be effective on and after September 1, 1941." The Act further directed that at the same time the Supreme Court filed its Rules of Procedure and Practice in civil actions as therein provided for, it "shall file with the Secretary of State a list of all articles or sections of the General Laws of the State of Texas, and parts of articles and sections of such General Laws, which, in its judgment, are repealed by Section 1 of this Act. Such list giving the construction of the Supreme Court as to the General Laws and parts of laws repealed by Section 1 *shall constitute, and have the same weight and effect, as any other decision of the Supreme Court.*"[1] The Supreme Court, implying an opinion

---

[1] It impresses the writer as a most interesting speculation: what kind of power was the Supreme Court exercising in its act of filing said list of repealed statutes? The Legislature was willing to enact that "all laws and parts of laws governing the practice and procedure in civil actions are [as of September 1, 1941] hereby repealed", but evidently was unwilling or deemed itself unable, to declare what particular existing statutory provisions were so repealed. Instead, the Legislature, in effect, declared, for example, that when and if the Supreme Court files a list of statutes and parts of statutes which in its judgment are repealed by Sec. 1 of this Act, such act of the court shall have the effect of determining what particular statutory provisions are repealed and "shall constitute, and have the same weight and effect, as any other decision of the Supreme Court." Was such act, with its declared effect, an exercise of judicial power, or was it an exercise of legislative power? Was it consonant with the imperative constitutional mandate that the "powers of the government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another"? Constitution Art. 2, Sec. 1. Particularly, I think, is the inquiry pertinent: was it consonant with the further constitutional prohibition that "no person, or collection of persons [such as the Supreme Court], being of one of these departments [judicial], shall exercise any power properly attached to either of the others [the Legislative for one], except in the instance herein expressly permitted"? What exception in the constitution, to the separation of the powers of government expressly (or impliedly, for that matter) permits the Supreme Court with no parties before it seeking adjudication of any alleged rights or wrongs; with no record before it, with no provision for any hearing or rehearing, to pronounce judgment that R.S.1925, Art. 1837, has been repealed? The necessary basis of such decision was, of course, the fact or opinion that said article was a law "governing the practice and procedure in civil actions", *and was not a "substantive law."* In the decision the Supreme Court expressed an intention of the Legislature, which the Legislature affirmatively declined to express; but, on the contrary, in effect said the Supreme Court should express for it.

Where in said House Bill 108 can there be found any expression of the intention of the Legislature to repeal said Art. 1837? Had it been a part of the provision of the Bill that said Art. should be repealed, would the legislature have adopted it? That statute was one affecting the *jurisdiction* of courts of civil appeals. By its provisions only did courts of civil appeals have authority to disturb judgments of trial courts because of unassigned errors. Isn't it likely the Legislature, had it undertaken itself to decide whether to repeal Art. 1837 might have concluded that since it involved a jurisdictional matter, it was a *substantive* law and, therefore, by the terms of the Bill not intended to be repealed. There are indications that had the Legislature performed its duty in this respect, instead of abdicating its power to do so, and purportedly imposing this power upon the Supreme Court, and had concluded that said Art. 1837 was substantive law, the Supreme Court in the proper exercise of its judicial power would have reached the same con-

that said provision was valid, filed the list, as therein provided, showing among others, that in its opinion said R.S.1925, Art. 1837, was repealed. Franki's Vernons Texas Rules of Civil Procedure, p. 628.

We have searched through the 822 (more or less) Rules promulgated by the Supreme Court to ascertain whether in lieu of Art. 1837 some other authority to the same effect had been substituted. We are most reluctantly forced to the conclusion that no such authority now exists.[2]

Upon the whole it is, therefore, our conclusion that the judgment of the court below should be affirmed, which is accordingly so ordered.

---

clusion. This is indicated, I think, by the provisions of Rule 816 as follows: "These rules shall not be construed to extend or *limit the jurisdiction* of the courts of the State of Texas * * * ." (Italics ours.)

If the repeal of Art. 1837 had been accomplished, if at all, by the Rules, then, of course, said Rule 816 could reasonably be held to have saved said statute from repeal. But even in that case, so to hold would be in conflict with the purported adjudication by the Supreme Court having "the same weight and effect, as any other decision of the Supreme Court" that it had been repealed. Since the Legislature and not the Supreme Court repealed Art. 1837, if it has been repealed, its provisions cannot be restored by a Rule unless, of course, it be held that even a law to "extend or limit the jurisdiction" of a court is not a substantive law.

In my opinion, label it as you may, the decision of the Supreme Court, that Art. 1837 has been repealed, was not a judicial act but was an exercise of Legislative power within no exception, express or implied, to the constitutional provision against any "person, or collection of persons" being of the "judicial department" to "exercise any power properly attached" to the Legislative department.

[2] If, as the opinion of this court in effect holds, the distinction between *fundamental error*, or error apparent upon the face of the record, and other errors which, under the law, as it formerly existed, were required to be assigned, has been abolished, then in this writer's individual opinion (which only this note expresses) such change is most deplorable. It is deplorable per se; but is made more so by certain provisions of the Rules, especially that of Rule 90 that "General demurrers shall not be used" and of Rule 67 providing for the trial of issues not raised by pleadings.

Every appellate judge of any considerable experience knows that not infrequently cases are tried upon an entirely wrong theory. Such a case presents no unusual difficulty if one party recognizes the correct theory and makes the record reflect it in such way that the appellate court may by its judgment give it effect. But it sometimes happens that an incorrect theory entertained by one party is acquiesced in by the other. In such a case it is practically a matter of impossibility for the appellate court, if confined to a consideration of the assigned errors or those only embraced in the points upon which the appeal is predicated, to write an opinion · not subject to false or misleading implications or, if possible, at least requiring a discussion of questions of law not raised by assignments of errors or points, naturally not briefed, and with results generally unsatisfactory to the court and to all parties concerned. Without such discussion, no intelligent disposition can be made of the contentions of the parties. Yet the law involved in such discussion cannot be applied to determine the final judgment which is to conclude the rights of the parties.

It is easy to imagine a case where, due to some misconception of the law, or for some other reason, plaintiff's petition is wholly insufficient to state a cause of action. No exception is urged to the pleadings, and, therefore, no judgment of the court as to their sufficiency. On that score there is nothing to be reviewed upon appeal. The evidence is not confined to the issues pleaded, but there is no objection thereto for such reason. It may well result that in such a case upon appeal, all contentions of the appellant must be denied, even though all should be sustained but for appellant's mistaken view of the law. How can such points be fairly discussed without becoming a precedent, impliedly at least, supporting unsound propositions of law.

Much is said these days about "justice" and the "administration of justice", but in my opinion when courts of civil appeals may not determine a judgment upon questions of fundamental error, the number of unjust judgments will be plentifully multiplied.