Catherine P. SHERRILL et al., Appellants,

v.

The ESTATE of George C. PLUMLEY,
Deceased, et al., Appellees.

No. 16329.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

June 6, 1974.

Rehearing Denied Aug. 22, 1974.

Second Motion for Rehearing Denied
Oct. 3, 1974.

Sears and Burns, David F. Beale, Lucas & Hudson, Hal S. Hudson, Houston, for appellant.

Bracewell & Patterson, Houston, of counsel, William K. Wilde, Charles G. King, III, Reynolds, White, Allen & Cook, Michael K. Swan, Barlow, Lacy & Smith, Joe D. Barlow, L. A. Greene, Jr., Houston, for appellees.

PEDEN, Justice.

This is an appeal from a judgment of the district court finding appellees to be the maternal heirs of Mrs. Alpha Genevieve Meyer and affirming the probate court's "Order Determining Maternal Heirship and Authorizing a Partial Distribution to the Maternal Kindred."

Mrs. Alpha Genevieve Meyer died intestate (in legal effect) on June 15, 1962, leaving no surviving spouse or children. Her mother, Mrs. Jennie C. Pettus (sometimes spelled Pettis), died in 1950. It was stipulated that appellants were all the heirs of Robert and Mary Plumbley, that appellees were all the heirs of Richard and Alice Plumley, that all the parties were properly before the court and that the only issue to be decided by the trial court was whether Richard and Alice Plumley or Robert and Mary Plumbley were the parents of Jennie C. Pettus and the grandparents of Alpha Genevieve Meyer. The jury found that Richard and Alice Plumley were the maternal grandparents of Mrs. Meyer.

Appellants contend that the trial court erred in admitting into evidence a newspaper obituary notice of the death of Robert Plumbley, an "heirship deed" purporting to list the heirs of Richard Plumley, pleadings

in Jennie C. and Sam Pettus' divorce and portions of home movies of one of the appellees, Mrs. George C. Plumley.

The obituary notice, labelled exhibit Greene 100, was printed in the Galveston Daily News on March 26, 1915 and stated:

"PLUMBLEY—Robert Plumbley, 77 years old, for forty years a resident of Galveston, died early yesterday morning in San Antonio, according to advices received by relatives here yesterday. Plumbley removed to San Antonio three years ago. He was born in England March 31, 1838, and came to Galveston when he was thirty-five years old. During most of his residence in Galveston Mr. Plumbley engaged in the sand and shell contracting business. He is survived by two daughters, Mrs. M. Ellis and Mrs. James P. Walsh of Galveston, and a son, R. G. Plumbley, of San Antonio. The funeral will be held at the residence of James P. Walsh, 3601 Avenue O, this afternoon at 3:00 o'clock. Rev. R. D. Wilson will conduct the funeral services. Interment will be made in the Lakeview Cemetery."

Appellees introduced the notice to show that Jennie C. Pettus was not a child of Robert Plumbley, since her name was not listed as a survivor.

Appellants maintain that the notice was hearsay and not admissible under any of the exceptions to that rule.

■■ The newspaper article is hearsay. Deramus v. Thornton, 160 Tex. 494, 333 S.W.2d 824, 831 (Tex.1960); Atchison, Topeka & Santa Fe Ry. Co. v. Ham, 454 S.W.2d 451, 461 (Tex.Civ.App.1970, writ ref. n. r. e.). To be admissible it must come under one of the exceptions to the hearsay rule. Appellees say the newspaper article was admissible under either the business records act (Art. 3737e, Vernon's Texas Civil Statutes), the ancient documents rule or the pedigree exception.

Article 3737e provides that:

"Section 1. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or event or the existence of the condition if the judge finds that:

" . . .

"(b) It was the regular course of that business for an employee or representative of such business *with personal knowledge* of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record." (emphasis added)

The newspaper article apparently was not written from the personal knowledge of an employee of the newspaper, but upon "advice received by relatives." The statement of facts shows that the trial judge did not find that the author had personal knowledge of the death of Robert Plumbley, or of the birth of his children. We hold that the obituary notice was not admissible under Art. 3737e. Skillern & Sons, Inc. v. Rosen, 359 S.W.2d 298 (Tex. 1962); North Texas Lumber Co. v. Kasper, 415 S.W.2d 470 (Tex.Civ.App.1967, writ ref. n. r. e.); Cooper Petroleum Co. v. LaGloria Oil & Gas Co., 436 S.W.2d 889 (Tex.1969).

We have found no Texas case holding that a newspaper article is admissible under the ancient documents exception to the hearsay rule.

■ There appears at § 1376 in the second volume of McCormick & Ray, Texas Law of Evidence 205 (2d ed., 1956), a discussion of whether recitals in ancient documents meet the requirements essential to the existence of a recognized exception to the hearsay rule, which are said to be 1) a necessity for the evidence and 2) a circumstantial guarantee of its trustworthiness. Three guarantees of trustworthiness

are listed. First is the rule of authentication, which requires that the instrument be more than thirty years old, unsuspicious in appearance and come from a proper custody. Second, the age of the instrument usually guarantees that the recitals were made before the controversy arose. It is the third guarantee of trustworthiness which we find lacking in our case: the requirement that such recitals must be made upon the personal knowledge of the declarant.

■ We are unable to identify the declarant in our case. Someone gave the information to the newspaper reporter and it probably was a relative of the deceased, Robert Plumbley, but the record does not show whether either the unnamed reporter or the unnamed source of his information had personal knowledge of the essential fact which appellees sought to establish: that Jennie C. Pettus should not have been listed as a daughter of Robert Plumbley.

Dallas County v. Commercial Union Assurance Co., 286 F.2d 388 (5th Cir. 1961), which appellees rely upon is not in point. In that case a 59 year old newspaper article stating that a fire damaged the county court house was allowed to show that charred timber may not have been caused by recent lightning. The court stated: "We do not characterize this newspaper as a 'business record', nor as an 'ancient document', nor as any other readily identifiable and happily tagged species of hearsay exception." It was admitted because the reporter had actual knowledge of the fire and that it was a matter of local concern. Its age gave it trustworthiness.

■ The mere fact that a document is more than 30 years old does not automatically make it admissible. Slattery v. Adams, 279 S.W.2d 445, 451 (Tex.Civ.App. 1954, affirmed 156 Tex. 433, 295 S.W.2d 859).

Newspaper articles have been held properly admitted in evidence under other exceptions to the hearsay rule. We held in

Seaway Co. v. Attorney General, 375 S.W.2d 923 (1964, writ ref. n. r. e.), that an article from an ancient newspaper, corroborating and showing early use of a beach by the public as a road, was admissible as reputation concerning a matter of public interest, when the reputation is of a past generation, citing 2 McCormick & Ray, Texas Law of Evidence 171, § 1322 (2nd ed., 1956) and numerous cases.

■ The pedigree exception to the hearsay rule allows evidence of "events and incidents which are generally regarded as of importance in the family life. This includes birth, death, marriage, age, parentage, relationship and heirship." 2 McCormick & Ray, Texas Law of Evidence 192, § 1347. The predicate for such statements is stated in Hurley v. Hirsh, 66 S.W.2d 387 (Tex.Civ.App.1933, writ dism.), "that the declarants were in position to know the related facts, that they are now dead, and that such facts could not be shown by living witnesses." Again, we cannot identify the declarant and it has not been shown that the declarant was in a position to know the facts in controversy.

■ Further, the relationship must be shown by evidence outside of the declarations themselves. Overby v. Johnston, 94 S.W. 131, 133 (Tex.Civ.App.1906, writ ref.); 2 McCormick & Ray, Texas Law of Evidence 188, § 1343. There is no showing who the "relatives" were. We find no basis for admitting the obituary notice under any exception to the hearsay rule.

■ When the trial judge admitted the obituary notice in evidence, he made this observation within the hearing of the jury:

"I believe it classifies under the ancient document rule so the common law rules of evidence apply. Subject to any further attack being made, I will admit it. It possibly comes under 3737e, but to my knowledge this has not been done before and I think in overruling the objection and admitting the paper it is only proper to let the jury know when they

receive this item nobody is necessarily vouching this information in the column is absolutely accurate. We can all take notice newspapers could make a mistake like anyone else could. The information could or could not be accurate, but we know that this was information that was published in March, 1915. It is subject to other evidence being received which may conflict with it. This is not conclusive and not offered as being conclusive. The whole matter is subject to cross examination and anything you care to point out.

"The objection is overruled. Greene 100 is admitted."

This instruction tended to minimize the effect of admitting the exhibit, and we hold that the error in admitting it probably did not cause the rendition of an improper judgment in the case.

■ Appellant next complains of the admission of an "heirship deed," executed in 1892 and identified as exhibit Swan 20, because the recital contained therein that the grantors are heirs of Richard Plumley is self-serving, hearsay, a conclusion of law and of no probative force. The recital complained of is:

"Know all men by these presents: That we, W. H. Plumley, Jennie C. Pettis, S. B. Pettis, A. M. Plumley, and Lizzie Plumley, being all the heirs of Richard Plumley deceased. . . "

It was introduced to show that Jennie C. Pettus was the daughter of Richard Plumley. Appellants made this objection:

"Our objection goes to the recitals in the instrument. Under 3726 it has been on file, we had sufficient notice, they have followed that, we can't dispute that. Our objection goes to the recitals in the instrument. We object they are conclusions of law, not statements of fact. They are self-serving declarations."

The appellants also objected that the recital was not competent to prove the issue in question: namely, who are the children of Richard Plumley?

The trial judge admitted the exhibit after giving the jury this instruction:

"These are matters that go to the weight to be given this item of evidence by the jury and should be considered and counsel has the right to make that objection in the hearing of the jury. I agree the mere statement by the people making the deed in 1892 that they are heirs does not necessarily mean they are children, they could be nephews, cousins. The jury should receive the exhibit with that caution."

We hold that the recital in the heirship deed was admissible as a statement of pedigree and family history under that exception to the hearsay rule. The essentials of the exception are stated in 2 McCormick & Ray, Texas Law of Evidence 184–194, Chapter 22 (2nd ed., 1956). They were met by proof that all of the declarants were dead, that they were related to each other, that the recital was made ante litem motam (before the controversy arose) and it appears that as to whether Jennie C. Pettis (or Pettus) was an heir of Richard Plumley, declarants W. H. Plumley, A. M. Plumley and Lizzie Plumley had no motive to deceive at the time the declaration was made. Indeed, they would each have received a larger share of the proceeds of the sale had they not included her name as one of the heirs.

The work cited states that personal observation is not necessary. The rule permitting the introduction of testimony relating to records pertaining to pedigree is more liberal than the rule applied to the introduction of documents relating to land and duly recorded in records kept for that specific purpose. Texas Co. v. Lee, 138 Tex. 167, 157 S.W.2d 626 (1941).

We do not consider the recitals in the heirship deed admissible under any other exception to the hearsay rule. The troublesome aspect of the recital is the legal

conclusion that the grantors were the heirs of Richard Plumley.

In any event, we consider that if the trial court erred in admitting the heirship deed, the harmful effect of the error was severely limited by the trial court's instruction noted above. It appears from the record that Jennie C. Pettus was either a daughter or a niece of Richard Plumley and we conclude that the trial judge's instruction to the jury that the mere statement by the grantors in the deed that they were heirs did not necessarily mean that they were children, that "they could be nephews, cousins" prevented the error, if any, from being a reversible one when considered alone or when considered with the erroneous admission of the obituary notice.

By their seventh and eighth points of error appellants urge that it was error for the trial court to admit the original and amended petitions from Sam and Jennie Pettus' divorce. These pleadings were admitted for the limited purpose of showing that Mrs. Pettus' daughter, Alpha, was 18 years old at the time of the divorce in 1900.

This was a declaration by a mother of the age of her daughter, which is admissible under the pedigree exception to the hearsay rule. Appellants objected to the introduction of the pleadings because there is no evidence in the record as to the actual execution of said instruments, and because pleadings are not ancient documents. · But pleadings may be ancient documents. Moore v. Horn, Tex.Civ.App., 359 S.W.2d 947, at p. 951. In Wren v. Howland, 75 S.W. 894, 899 (Tex.Civ. App.1903, writ ref.), the court admitted an amended petition in a divorce case to show that the relationship of husband and wife had existed and to identify the child of the marriage. In our case the age of the pleadings, 73 years at time of trial, made them ancient documents and proved their execution. The original petition bears the notarized signature of Jennie C. Pettus and was admissible under the pedigree exception to show Alpha Meyer's age in 1900.

The amended petition is signed only by her attorney and does not come within the pedigree exception. It is still an ancient document and if its introduction was error it was harmless since it was also introduced for the limited purpose of showing Alpha Meyer's age in 1900, and the recital of age is the same in both documents. Points 7 and 8 are overruled.

Appellants also complain of the admission of home movies of one of the appellees, Mrs. George C. Plumley, showing scenes of Mrs. Pettus and Mrs. Meyer with members of the Richard Plumley family. It is argued that the movies were not material nor relevant to any issue in the case and were highly prejudicial to appellants. Only portions of the films contained pictures of Mrs. Pettus and Mrs. Meyer. The trial court instructed that those segments of the films not depicting the two ladies be shown at a greater rate of speed, and the record indicates that it was done.

Appellees laid the proper predicate that the movies accurately and correctly depicted the people and scenes shown. The films were relevant since they showed Mrs. Pettus in a family setting with descendants of Richard Plumley. Mrs. George C. Plumley was also pictured in the film, and as a witness testified that she knew Mrs. Pettus to be Richard Plumley's daughter. We find no error in permitting the showing of the film. General Accident Fire & Life Assurance Corp. v. Camp, 348 S.W.2d 782, 786 (Tex.Civ.App.1961, no writ).

Appellants by their sixth point of error complain of the exclusion of a handwritten statement allegedly made by Alpha Meyer relating to Jennie Pettus' parentage and other family history. It was identified as exhibit Beale 103. Mr. George Lewis, Jr., the funeral director at Mrs. Pettus' funeral, identified the exhibit as a written statement Alpha Meyer gave to him at the time

of her mother's death. He could not state that it was in Mrs. Meyer's handwriting, but his testimony indicated that she furnished it to him as family history for the newspaper notice.

At the time the handwritten statement was offered it was objected to as hearsay and because appellants had failed to comply with written interrogatories asking them to list and describe all statements in their possession, custody or control which referred to or related to family history or pedigree of Richard and Alice Plumley or their descendants, Robert and Mary Plumley or their descendants, Sam and Jennie Pettus or their descendants, or Alpha Genevieve Meyer. Both grounds were sustained. The exhibit in question was in control of appellant John Plumbley.

At the time it was first offered no predicate was laid to prove the handwriting was Mrs. Meyer's, but later in the trial a bank signature card was introduced and shown to be in Alpha Meyer's handwriting, so the predicate was laid for the jury to determine if the handwritten statement was in Mrs. Meyer's handwriting. Art. 3737b, Vernon's Texas Civil Statutes; Nass v. Nass, 149 Tex. 41, 228 S.W.2d 130, 132 (1950). The handwritten statement was offered again after the hearsay objection had been met, leaving as the only grounds for its exclusion that it was not listed and described in the answers to the interrogatories. The answer appellants gave was "We have not had sufficient time within which to answer this interrogatory." This amounted to a refusal to answer plus an attempt to justify the refusal.

The provisions of Rule 168, Texas Rules of Civil Procedure, establishing sanctions for refusal to answer state:

"If a party refuses to answer any interrogatory, the proponent of the question may, upon reasonable notice to all persons affected, apply to the court in which the action is pending for an order compelling an answer. Reasonable expenses, including reasonable attorney's fees, incurred in obtaining the order or opposing the motion may be assessed, and a refusal to comply with the order shall authorize the court to act, as provided in paragraphs (a) and (b) of Rule 215a.

"If a party, except for good cause shown, fails to serve answers to interrogatories after proper service of such interrogatories, the court in which the action is pending may, on motion and notice, make such orders as are just, including those authorized by paragraph (c) of Rule 215a."

These sections require "reasonable notice to all persons affected" or "motion and notice" respectively before application may be made to the court for an order. Therefore, absent motion and notice, followed by an order compelling answers, no provision is made for invoking sanctions for refusal to answer. Since the record does not reflect that this was done in the present case, we hold that the exclusion of the exhibit was error.

We cannot say, however, that the exclusion was harmful to appellants. Two other exhibits which were admitted in evidence on the testimony of Mr. Lewis also purportedly came from Mrs. Meyer and stated, as this exhibit did, that Mrs. Pettus' father was Robert Plumley; the other evidence in the case showed that Robert Plumley and his father came from England to Galveston, while it was Richard and his family that settled in Webster. Exhibit Beale 103 states that Mrs. Pettus was "born in Lankashire (sic), England, daughter of Mary and Robert Plumley moved to Texas when she was 7 years old. Family settled at Webster, Texas. Mrs. Pettus spent her young ladyhood in Galveston, Texas as no schools at Webster, graduate Ball High School Galveston. Married Samuel B. Pettus in Galveston in 1881. Moved to Houston 1889 resident since . . . ."

Of course we cannot say with certainty what effect this evidence might have had on the jury had it been admitted, but we

believe that it would have been harmful to the appellants. We hold that its exclusion did not cause the rendition of an improper verdict in this case. Although some of the material found in Beale 103 is merely repetitious of that presented in other exhibits, the statement that Mrs. Pettus' family settled in Webster is an indication that she was a member of the Richard Plumley family.

▮ Appellants contend that the evidence is insufficient to support the jury's finding and is so contrary to the overwhelming weight and preponderance of the credible evidence as to be manifestly unjust and unfair. As stated earlier, the evidence is conflicting. Appellants provided records showing Robert and Mary Plumbley to be Jennie C. Pettus' parents, and evidence that the birth date of Mrs. Pettus was 1869. Appellees introduced witnesses who stated that from their family history they knew Jennie Pettus to be a daughter of Richard and Alice Plumley, photographs of Jennie Pettus with members of Richard Plumley's family, evidence that one of Richard Plumley's relations paid Jennie Pettus' funeral expenses, and Sam and Jennie Pettus' divorce pleadings to challenge the alleged age of Mrs. Pettus. Appellant introduced the death certificate of Jennie C. Pettus stating Robert and Mary Plumbley were her parents, which information was received from Alpha Meyer, and evidence that Jennie C. Pettus was born in 1869 and 11 years younger than appellees alleged. Appellees attempted to refute the age differential in alleging Jennie C. Pettus was the same person as Jane C. Plumley, born in 1858 and that Jennie C. Pettus was married in 1882, only 12 or 13 years after appellants allege she was born. Richard Plumley's grandchildren, parties to the suit, state they knew Jennie C. Pettus and from their family history understood that she was a daughter of Richard Plumley, and a sister to their parents. Pictures were introduced showing Jennie and Alpha with members of the Richard Plumley family.

▮ Appellants challenge the credibility of appellee's witnesses because they were interested parties to the suit. "It is elementary that the credibility of witnesses and the weight to be given their testimony are questions for the jury. This is especially true with respect to the testimony of parties or other persons interested in the litigation." Arrington v. Paschall, 352 S.W.2d 866, 870 (Tex.Civ.App.1961, writ ref. n. r. e.). See also Harbuck v. Ramos, 371 S.W.2d 912, 913 (Tex.Civ.App.1963, no writ).

We hold that the evidence supports the verdict and the judgment.

▮ By Points of Error 13 and 14 appellants complain that the trial court erred in failing to grant their motion to strike the setting and intervenor's motion for continuance.

In urging that the trial judge should have granted their motion to strike the trial setting, the appellants say that the appellees were not correct when, under Local Rule 3 of the Harris County District Courts, they certified in requesting the trial setting that the pleadings were in order and that all matters preliminary to trial had been accomplished; that the trial court erred in overruling the motion to strike the setting because this provision of the rule should have been applied:

"If said certificate is not made or is incorrect in any particular, the setting shall, upon motion filed at or before the announcement of the docket, be struck from the General Docket for that assignment."

Appellants argue that the use of the word "shall" in Local Rule 3 makes the granting of the motion to strike mandatory. We do not agree.

"Although the word 'shall' is generally construed to be mandatory, it may be and frequently is held to be merely directory . . . Provisions which are not of the essence of the thing to be done, but which are included for the

purpose of promoting the proper, orderly and prompt conduct of business, are not generally regarded as mandatory." Chisholm v. Bewley Mills, 155 Tex. 400, 287 S.W.2d 943, 945 (1956).

The purpose of Local Rule 3 is to promote the "proper, orderly and prompt conduct" of the general docket. The rule is not mandatory but directory, and the trial court did not abuse its discretion in overruling the Motion to Strike the Setting.

■ Appellants also argue that they were harmed by the trial court's failure to grant the intervenor's motion for continuance. The matter of granting a continuance rests with the discretion of the trial judge, and an order granting or denying a motion will not be disturbed on appeal unless there was an abuse of discretion. Hernandez v. Heldenfels, 374 S.W.2d 196, 202 (Tex.1967); J. C. Penney Co. v. Duran, 479 S.W.2d 374, 381 (Tex.Civ.App. 1972, writ ref. n. r. e.).

■ The intervenors in our case were parties to the suit in the Probate Court. They claim their new attorneys hired for the District Court proceeding did not have time to adequately prepare for trial. We find no abuse of discretion in overruling the motion for continuance. The intervenors were parties in the Probate Court, and the fact that they were late in joining the appeal should not be reason to delay the disposition of the case. Further, counsel for those appellants who perfected their appeal immediately following the Probate Court proceeding were obviously well prepared. The interests of all the appellants were identical, and their interests were well presented and argued by counsel. We overrule Points 13 and 14.

■ Appellants also complain of the trial court's charge to the jury that it could return a 10–2 verdict in compliance with Texas Rules of Civil Procedure Rule 292, and of the trial court's failure to grant a mistrial because the verdict returned by the jury was not unanimous.

Appellees contend that appellants did not preserve the objections to the charge since they were not properly filed with the District Clerk. The transcript shows the objections to the charge were filed with the District Clerk and they are listed in the index. The date they were filed was February 15, 1974, the same day the transcript was prepared. The District Clerk's certificate stated that all papers in the transcript were in the files except the objections to the charge. An obvious discrepancy existed, so we requested a supplemental transcript to resolve this question.

It shows that the objections to the charge were properly filed with the District Clerk in compliance with Rule 272. The original certificate was in error regarding the objections to the charge; they were on file and may be considered by this court.

■ Appellants' point of error on the 10–2 verdict concerns the constitutionality of Rule 292. § 13 of Article V of the Texas Constitution, Vernon's Ann.St., provides that in civil trials in District Courts the petit jury shall number twelve, but that "nine members of the jury, concurring, may render a verdict . . .; provided, that the Legislature may change or modify the rule authorizing less than the whole number of the jury to render a verdict." The legislature enacted a change providing for unanimous verdicts, which became Art. 2203, Vernon's Ann.Tex.Civ.St. (1925). This statute remained in force until 1939 when the legislature granted the Supreme Court "full rule-making power in the practice and procedure in civil actions . . ." by Art. 1731a, which stated: "all laws and parts of laws governing the practice and procedure in civil actions are hereby repealed, such repeal to be effective on and after September 1, 1941." Section 3 of Article 1731a states:

"At the time it files the rules, the Supreme Court shall file with the Secretary of State a list of all articles or sections of the General Laws of the State of Texas, and parts of articles and sections of such General Laws, which, in its judgment, are repealed by Section 1 of this Act. Such list giving the construc-

tion of the Supreme Court as to the General Laws and parts of laws repealed by Section 1 shall constitute, and have the same weight and effect, as any other decision of the Supreme Court."

Article 2203 was one of the statutes listed by the Supreme Court and was repealed by Article 1731a. City of Santa Anna v. Leach, 173 S.W.2d 193 (Tex.Civ.App.1943, writ ref. w. o. m.).

At the time Article 2203 was repealed the Supreme Court promulgated Rule 291 providing for unanimous jury verdicts. Rules 291 and 292 were amended effective February 1, 1973 to authorize the 10–2 jury verdict of which the appellants complain. Appellants question the validity of the Supreme Court's authority to alter the 9–3 jury verdict requirement of the Constitution in light of its language:

" . . . provided, that the *Legislature* may change or modify the rule authorizing less than the whole number of the jury to render a verdict." (emphasis added)

 Since the Texas Rules of Civil Procedure have the weight and effect of a Supreme Court decision, Rule 292 is binding upon us. We overrule Points of Error 1 through 3.

The judgment of the trial court is affirmed, Associate Justice Evans concurring.

EVANS, Justice (concurring).

I fully concur in the opinion of the majority in all but one particular. In my opinion the trial court, in the exercise of its discretion, could properly have determined the fifty-nine year old obituary notice was admissible as an exception to the hearsay rule. Under the circumstances here present it could have concluded that the statements in this ancient publication were made by the newspaper staff in the line of their official employment and based upon declarations made by members of the decedent's family; that due to the lapse of so many years, such published statements constituted some of the best evidence ob-

tainable on the issue. See McCormick & Ray, Texas Law of Evidence, Vol. 2, § 1343, p. 186 et seq.; Lange Texas Land Titles, § 891, pp. 412–416; Coffee v. William Marsh Rice University, 408 S.W.2d 269, 284 (Tex.Civ.App.—Houston [1st Dist.] 1966, writ ref'd n. r. e.).

## ON MOTION FOR REHEARING

PEDEN, Justice.

Appellants again urge us to hold that the heirship deed, Exhibit Swan 20, was not admissible in evidence.

We have no quarrel with the holding in Smith v. Lynn, 152 S.W.2d 838 (Tex.Civ. App.1941, no writ) that the "inherently weak" testimony of a witness as to a certain link in the heirship chain of title to a tract of land which was a "mere conclusion wholly unsupported by facts," was legally insufficient to establish the vesting of title to land in the persons named by the witness as the heirs.

We believe, however, that in our case the heirship deed was admissible, not to prove a necessary heirship link in a trespass to try title suit, but at least to show that in 1892 W. H. Plumley, Jennie C. Pettis, S. B. Pettis, A. M. Plumley and Lizzie Plumley associated themselves together in executing a deed in which they declared that they were all of the heirs of Richard Plumley deceased. We think the trial judge did not err in admitting the exhibit with the instruction he gave.

We overrule the motion for rehearing.

Since the filing of our majority and concurring opinions on June 6, 1974 the appellants have filed a "motion to consider the absence of indispensable parties." They point out that the appellees' pleadings and the judgment appealed from list a number of the appellees as, for example, the "Estate of George C. Plumley, Deceased."

The appellees assert that some six of the persons whose estates are thus listed apparently died pendente lite before entry of the Probate Court's order in September, 1972 and that all such decedents except

William Lloyd New were described as deceased in the final judgment entered in the District Court.

The appellants point out that an estate of a deceased person is not a legal entity and cannot sue or be sued, citing Camellia Diced Cream Co. v. Chance, 339 S.W.2d 558 (Tex.Civ.App.1960, no writ), Neblett v. Butler, 162 S.W.2d 458 (Tex.Civ.App.1942, writ ref. w. o. m.) and other cases.

The appellants assert that the heirs, executors or administrators of such deceased parties, each of whom was on the appellees' side of the suit as descendants of Richard and Alice Plumley, have not been joined as parties and are indispensable parties; that this lack of indispensable parties is fundamental error and requires reversal of the judgment and remand of the case.

The absence of these parties was not raised in the trial court. If they were indispensable parties to the suit in the district court, proceeding in their absence was fundamental error which we could and should notice on our own motion, but if they were not, their joinder cannot be essential to jurisdiction of a court to proceed to judgment. Petroleum Anchor Equipment, Inc. v. Tyra, 406 S.W.2d 891 (Tex. 1966).

Rule 39, Texas Rules of Civil Procedure, was amended effective January 1, 1971, following the model of Rule 19, Federal Rules of Civil Procedure. The amendment was in effect when this cause proceeded to trial de novo in the district court on October 30, 1973. The following statements from the recent holding of the Texas Supreme Court in Cooper v. Texas Gulf Industries, Inc., 17 Tex.Sup.Ct.Jour. 340 (1974), are particularly pertinent:

"Contrary to our emphasis under Rule 39 before it was amended, today's concern is less that of the jurisdiction of a court to proceed and is more a question of whether the court ought to proceed with those who are present. Rippey v. Denver United States National Bank, 42

F.R.D. 316 (D.Colo.1967). The United States Supreme Court provides a helpful discussion of the objectives sought by its amended Rule 19 in Provident Tradesmens Bank & Trust v. Patterson, 390 U. S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). One of the practical factors the court took into consideration in holding that an absent party was not jurisdictionally indispensable was the fact that the case had actually been tried as to those parties who were present and there was no objection at the trial level concerning the nonjoinder of a party. As expressed in Continental Insurance Co. of New York v. Cotten, 427 F.2d 48, 51 (9th Cir. 1970), 'at the appellate stage there is reason not to throw away a judgment just because it did not theoretically settle the whole controversy.'

"The amended rule includes practical considerations within the rule itself, including the extent to which an absent party may be prejudiced, the extent to which protective provisions may be made in the judgment, and whether in equity and good conscience the action should proceed or be dismissed. The factors mentioned in the rule which a judge may consider are not exclusive. Provident Tradesmens Bank & Trust Company v. Patterson, *supra*; Bixby v. Bixby, 50 F. R.D. 277 (S.D.Ill.1970); 7 C. Wright & A. Miller, Federal Practice and Procedure, *supra*, at 14. As expressed in Schutten v. Shell Oil Co., 421 F.2d 869, 874 (5th Cir. 1970), '[t]he watchwords of Rule 19 are "pragmatism" and "practicality." The court must, however, always consider the possibility of shaping a decree in order to adjudicate between the parties who have been joined.'

"Under the provisions of our present Rule 39 it would be rare indeed if there were a person whose presence was so indispensable in the sense that his absence deprives the court of jurisdiction to adjudicate between the parties already joined. Although not of controlling importance, the very title of the rule has

been changed from 'Necessary Joinder of Parties' to 'Joinder of Parties Needed for Just Adjudication.' Subdivision (a) provides that certain persons 'shall be joined,' but there is no arbitrary standard or precise formula for determining whether a particular person falls within its provisions. It is clear, moreover, that the persons described in the subdivision are to be joined only if subject to service of process. When such a person cannot be made a party, the court is required to determine 'whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed.' "

■ We do not know whether the heirs, executors or administrators of the deceased parties in our suit are subject to process. We hold that they were not indispensable parties, so the trial court did not commit fundamental error by proceeding without their having been made parties in this proceeding in rem.

We overrule the appellants' "motion to consider the absence of indispensable parties."