**Nora Lee BURTON and Arlene Schultz, Appellants,**

v.

**Woodrow W. BEAN, II and Ward L. Koehler, Co-Administrators of the Estate of Veatrice Ulmer McGuffey, Deceased, Appellees.**

**No. 6580.**

Court of Civil Appeals of Texas, El Paso.

March 23, 1977.

Ramon (Ray) Ramos, Jr., El Paso, for appellants.

Woodrow W. Bean, II, Ward L. Koehler, El Paso, for appellees.

## OPINION

OSBORN, Justice.

This is an appeal from an order of the County Court, in probate, approving fees for Co-Administrators in a final account. We affirm.

By two points of error, two of the three heirs involved in an administration contend that the claim for fees of Co-Administrators was not properly itemized, and that the order approving the claims provided compensation to the Co-Administrators in excess of that provided by Section 241(a).[1] Following the death of Veatrice Ulmer McGuffey on February 28, 1974, her daughter, Nora Lee Ekola (now Nora Lee Burton), employed Woodrow W. Bean, II, to file an application for temporary administration on her estate. At the same time, her other two daughters, Bertha Maudelle Elliott, who is not an Appellant, and Arlene Schultz, who is an Appellant, employed Ward L. Koehler to also file an application for temporary administration. Subsequent-

---

1. All Section references are to the Texas Probate Code.

ly, all three heirs renounced their rights to represent the estate in favor of their respective attorneys, who were appointed Co-Administrators. They were appointed, qualified, and served in such capacity, and in their final accounting seek additional reimbursement for their services.

At the hearing on the final account, the undisputed evidence established that at the time the Co-Administrators were appointed, the heirs agreed and understood that they would also serve as attorneys for the estate and would be reasonably compensated for such services. On June 4, 1974, the Court entered an order approving an application to pay administration expenses, which included fees in the amount of $4,500.00 for Woodrow W. Bean, II, and $4,750.00 for Ward L. Koehler. The application had an attached exhibit which itemized the date and services rendered, and the application reflected the total hours involved in performing such services as had been rendered at that time.

On June 23, 1976, the Co-Administrators filed their final account, which included a request to pay additional administrator's and attorney's fees and expense to Woodrow W. Bean, II, in the sum of $2,400.00, and to Ward L. Koehler in the sum of $13,525.67. Again, there were exhibits attached which showed the services rendered, the date thereof, and the total hours involved. There is no showing of how much time was served in the capacity of Co-Administrator and how much as an attorney for the estate. Perhaps in many instances it would be a fine line to decide in which capacity the service was rendered.

■ Appellants contend that the Appellees are limited by the provisions of Section 241(a), and that a five percent commission on sums received and paid out in cash in this instance would be $6,600.00, an amount less than the compensation paid to the Co-Administrators prior to the final account, and that therefore they should receive no additional compensation. Of course, an administrator may receive reasonable compensation for his services if he (1) manages a farm, ranch, factory, or other business of the estate, or (2) if the compensation as calculated on the five percent commission is unreasonably low. In this case, there is neither proof nor a finding by the Court that either of those alternatives are applicable. Thus, if Appellees are limited solely to compensation provided for in Section 241(a), the order approving the final account is erroneous.

But, Section 242 provides that personal representatives of estates shall be entitled to all necessary and reasonable expenses incurred by them in the management of the estate, and all reasonable attorney's fees necessarily incurred in connection with the proceedings and management of such estate. This necessarily raises the question of whether an attorney, as an administrator of an estate, may also perform the legal work and be compensated for his reasonable attorney's fees. "The majority rule appears to be that in the absence of statute otherwise providing, an executor or administrator is not entitled to extra compensation for legal services rendered by him." Annot., Right of executor or administrator to extra compensation for legal services rendered by him, 65 A.L.R.2d 809, 811 (1959). That annotation cites but one Texas case, *Neblett v. Butler*, 162 S.W.2d 458 (Tex.Civ.App.—Galveston 1942, writ ref'd w. o. m.). In that case, the Court pointed out the reason for the majority rule and concluded that on public policy, one in a position of trust should not place himself in a situation where his interest conflicts with his duty as a fiduciary. The Court, in considering this problem, said:

"In 11 R.C.L., p. 231, it is said: 'It has been stated that if he (the executor) chooses to exercise his professional skill as a lawyer in the business of the estate, it must be considered a gratuity, and that to allow him to become his own client and charge for professional services, would be holding out inducements for professional men to seek such representative places to increase their professional business, which would lead to most pernicious results.'

"There is certainly very respectable authority for holding that executors cannot

employ themselves to render legal services for the benefit of an estate."

But, the Court went further in analyzing the problem and by way of dictum said:

"However, strictly speaking, a personal representative does not have authority to bind an estate for legal service. Art. 3691, Vernon's Ann.Tex.Civ.Statutes, provides: 'Executors * * * shall also be allowed all reasonable expenses necessarily incurred by them in the preservation * * * of the estate, and all reasonable attorney's fees, that may be necessarily incurred by them in the course of the administration.' A personal representative owes the duty to preserve the estate, and expenses which he incurs in the performance of such duties he may recover. A prudent executor will only agree to pay an attorney, whom he employs, reasonable attorney's fees, for if the reasonableness of the fees is contested, the executor can only recover such as are reasonable. Whether an executor, who is a lawyer, performs the services himself, or employs another, the reasonableness of the fees charged must stand the same test. So what difference could it make whether a lawyer-executor employs another lawyer, or performs the services himself? A testator chooses his executor because he thinks him trustworthy, and we think it unlikely the testator would not want the lawyer, to whom he intrusted the management of his estate, to be intrusted with the management of the law business incident thereto. And as already pointed out, he does not have to trust him to fix a fee that is not exorbitant, the law prevents that. We therefore question the soundness of a public policy which would tend to defeat a testator's desire to have his affairs, legal as well as business, attended to by his executor, by one he has learned to trust. * * * "

The lead case in the above mentioned annotation is *In re Thompson's Estate*, 50 Cal.2d 613, 328 P.2d 1 (1958). In that case, suit was brought by an executor to recover an allowance of attorney's fees in addition to an allowance of executor's fees. The will under which the attorney served expressly provided that in the event he acted as executor and also as his own attorney, he should receive a fee in each capacity. The Court, in its opinion, noted the general rule which prohibits a fiduciary from making a profit by employing himself. But, it concluded, that the overall purpose of the probate law was to give full force and effect to the clear intention of the testatrix. The Court concluded that such intention should be carried out and said:

" * * * By imposing her faith and trust in her designated executor and providing for his compensation, the purpose of the policy which might otherwise restrict self-dealing transactions can no longer be accomplished and the policy is no longer a controlling consideration. There is here the added safeguard of a statutory standard by which the services performed for the estate may be objectively evaluated."

We believe the same reasoning should be followed in this case. The evidence is undisputed that these attorneys did not seek the appointment as Co-Administrators, but they did accept such appointment at the request of the probate judge to resolve a conflict between the parties. In addition, they accepted the appointment only with the understanding that they would be compensated for their legal services. In addition, there is the safeguard that their claim for services must be itemized and approved by the Court, and this was done only after satisfactory proof of the services and independent proof as to the reasonableness of the charges, in accordance with Section 242. Although the allowance seems high, the probate judge obviously was aware of all of the services rendered, and there is evidence to support the trial Court's finding that the charges are reasonable.

By way of caution, it would seem to be the better practice, where an attorney is to serve in a dual capacity of a fiduciary and an attorney for the estate, to have the order of appointment expressly provide that such is done with the express consent of the

heirs, if that be the case as here, and that reasonable attorney's fees will be allowed in addition to the statutory administrator's fees.

 While we cannot determine the manner in which the total fees were allocated either as administrator's fees or attorney's fees, there was no effort made by the Appellants to determine during the contest how many hours were performed in the capacity of administrator and how many as an attorney for the estate. The claims filed by these two attorneys did list each task performed and the total hours of service, and there was no cross-examination or effort to show the failure to perform the task as itemized or that the amount of time spent on any particular task was excessive. Apparently, no attempt was made to have the Court allocate the fees to a particular capacity. The one who claims error bears the burden of showing such error to exist. That burden has not been met under the record before this Court. The evidence was sufficient for the Court to have approved the entire claim for attorney's fees, although the Appellees admittedly were entitled to at least $6,600.00 for administrator's fees.

Finding no reversible error, the two points of error are overruled and the judgment of the trial Court is affirmed.

WARD, Justice, concurring.

I concur in the affirmance of the judgment of the trial Court, but, with the facts present before us, I would put the basis as Section 241(a), and that the Court thereunder was empowered to award the Co-Administrators a reasonable compensation for their services. The application by the Co-Administrators and the testimony, the entire hearing for that matter, was that they were entitled to more money than that allowed under the first sentence of Section 241(a) regarding the statutory percentage. The Appellants make no complaint as to the pleadings or to the lack of any finding in the Court's order that there be a preliminary finding that the percentage method be "unreasonably low." Such a presumed

finding was made. The Appellants rely in the main on the earlier cases that required the establishment of an "exceptional case" before the administrator could receive additional compensation. *Shirey v. Harris*, 288 S.W.2d 315 (Tex.Civ.App.—Fort Worth 1956, no writ), and *Dallas Joint-Stock Land Bank in Dallas v. Maxey*, 112 S.W.2d 305 (Tex.Civ.App.—Dallas 1937, no writ). Those cases are no longer controlling, and, as pointed out in the interpretive commentary accompanying the statute, the Court is now afforded flexibility in fixing a reasonable compensation.