**Mary Lou Heep HENDERSON,**
**Appellant/Appellee,**

**v.**

**Kathleen Ebert VIESCA, Former Guardian of the Person and Estate of Mary Lou Heep Henderson, Appellee/Appellant.**

No. 04–95–00229–CV.

Court of Appeals of Texas,
San Antonio.

March 6, 1996.

Rehearing Overruled April 18, 1996.

Douglas C. Young, San Antonio, for Appellant.

Reba Bennett Kennedy, Law Offices of Reba Bennett Kennedy, San Antonio, James G. Ruiz, Winstead, Sechrest & Minick, P.C., Austin, Raul X. Villarreal, San Antonio, Rob-

ert E. Golden, Charles M. Jefferson, Robert E. Golden & Associates, San Antonio, for Appellee.

Before CHAPA, C.J., and RICKHOFF and HARDBERGER, JJ.

## OPINION

CHAPA, Chief Justice.

This is an appeal from the trial court's orders approving appellee's final guardianship accounts and awarding appellee additional guardianship fees and attorney's fees for legal services rendered to the guardianship estate. Trial was to the court, which determined that appellee's final accounting for the estate was free of error and that the fees applied for as both guardian and attorney were reasonable and necessary. In thirteen points of error, appellant, through her court appointed attorney ad litem, appeals the decisions of the trial court. We affirm the decision of the trial court and hold, in part, that one may serve as both the guardian and the attorney for an estate and be paid in both capacities. Appellee brings one cross point of error alleging that the trial court erred in refusing to award attorney's fees incurred in defending her final account following her resignation as guardian of the estate. We sustain appellee's crosspoint.

## FACTUAL AND PROCEDURAL BACKGROUND

The guardianship of the estate of Mary Lou Heep Henderson was created in 1981, when Henderson's three daughters filed an application to appoint permanent guardian. A guardianship of Henderson's person was created in 1982. Henderson's daughters alleged that Henderson's estate was valued at several million dollars and that she was incompetent to manage her affairs.

In 1988, appellee was appointed guardian of Henderson's estate and person. As a result of the Henderson family discord, numerous lawsuits regarding the estate, as well as the complexity of the estate, appellee conditioned her appointment on her ability to serve both as guardian and attorney for the guardianship estate. No one objected to this arrangement. Accordingly, in its order appointing appellee as guardian, the probate court indicated that appellee was authorized to engage herself as attorney for the guardianship at her hourly fee, subject to the review and approval of the probate court. The order also stated that appellee would be entitled to the statutory guardian's commission for the performance of her duties as guardian.

In 1991, appellee sought an order from the probate court authorizing her to retain an attorney on behalf of the estate in an effort to increase the distributions to Henderson from the Herman F. Heep trusts, of which Henderson and her daughters were beneficiaries. The probate court authorized appellee to assert all legal rights and interests that Henderson had in the Heep trusts. Appellee retained attorney Joyce Moore to sue the trustee of the Heep trusts for a declaratory judgment construing the terms of Herman Heep's will in Henderson's favor and for breach of fiduciary duty.

The resulting litigation took place in Travis County, Texas. As a result of the large number of trust beneficiaries involved, the litigation was complex and included several subsidiary actions. Henderson's daughters took positions adversarial to Henderson as an increase in distribution to Henderson would result in a decrease in distribution to her daughters. Henderson ultimately prevailed in the litigation. The result was an increase in the trust distribution to Henderson in the estimated amount of ten million dollars over the course of her lifetime. The action for breach of fiduciary duty was settled in favor of Henderson as well.

During the course of this litigation, the proceeding giving rise to this lawsuit began. Kathleen Henderson, one of Henderson's daughters, filed a motion to remove appellee as guardian and a motion to prohibit payment of attorney's fees to appellee and for disgorgement. Following several hearings on the matter, the probate court determined that Kathleen Henderson lacked standing to urge her motion to prohibit payment of attorney's fees and for disgorgement as she and Henderson were adverse parties in the Travis County litigation.

In December of 1993, following the settlement of the majority of the Travis County litigation, appellee tendered her resignation as guardian of the person and estate of Henderson. Appellee's resignation rendered Kathleen Henderson's motion for removal moot. Appellee filed with the probate court a final accounting, an application for the payment of guardianship fees, an application for additional compensation, and an application for payment of attorney's fees and expenses. Henderson's attorney ad litem filed, on Henderson's behalf, objections to appellee's final account and a second amended bill of review challenging the probate court's approval of appellee's previous accounts and applications for guardian and attorney fees. All of the foregoing matters were consolidated for trial.

Following a bench trial, the probate court 1) denied Attorney Ad Litem's Second Amended Bill of Review; 2) approved Guardian's Final Account, with the exception of the sum of $1,067.50; 3) authorized payment of guardianship fees; 4) authorized payment of additional compensation; and 5) authorized payment of attorney's fees and expenses.

## ARGUMENTS ON APPEAL

### 1. Entitlement to Fees as Both Guardian and Attorney for the Estate.

In her objections to appellee's final account, appellant objected to appellee charging the estate as both a guardian and an attorney. By agreement of the parties, the trial court heard this objection based upon stipulated facts and decided the issue as a matter of law. The court concluded that it was proper for compensation to be paid to appellee in her dual capacities as guardian of the person and estate of Henderson and as attorney for the estate. We review the trial court's determination of legal issues de novo. See *Pulido v. Dennis*, 888 S.W.2d 518, 520 (Tex.App.—El Paso 1994, no writ).

Appellant contends that the common law rule regarding dual fees is that the personal representative of an estate, whether an administrator, executor, guardian, or trustee, who is an attorney, is not entitled to extra compensation in the form of attorney's fees for legal services performed on behalf of the estate, but is instead limited to the compensation allowed by law for representative services. There is no Texas case law addressing the issue of an individual serving a ward's estate as both guardian and attorney. However, the facts in the instant case are closely analogous to a situation involving an estate administration in which an individual serves as both the executor of the estate and the attorney for the estate. Such a circumstance has been addressed by Texas courts.

In *Burton v. Bean*, 549 S.W.2d 48 (Tex. Civ.App.—El Paso 1977, no writ), two attorneys were appointed as co-executors of an estate. At the time of their appointment, it was agreed that they would also serve as attorneys for the estate and be paid for both services. The court determined that service by the executors as attorneys for the estate was proper, particularly in light of the fact that such an arrangement had been approved by the probate court. *Id.* at 51–52. In *Neblett v. Butler*, 162 S.W.2d 458 (Tex.Civ. App.—Galveston 1942, writ ref'd w.o.m.), the court noted the general rule against estate representatives serving the estate as both representative and attorney. The obvious public policy concern of such a rule is to avoid the creation of situations in which a representative's personal interests conflict with his duty as a fiduciary. However, the *Neblett* court noted that

[w]hether an executor, who is a lawyer, performs the services himself, or employs another, the reasonableness of the fees charged must stand the same test. So what difference does it make whether a lawyer-executor employs another lawyer, or performs the services himself?

*Id.* at 461–62.

The *Neblett* court by way of dicta and the *Burton* court through a specific holding approved situations involving fiduciaries serving an estate as both executor and attorney largely because of the statutory safeguards against excessive and unreasonable fees. In both cases, the courts noted the objective evaluation of attorney's fees performed by the probate court. In *Burton*, the court, upholding the dual compensation received by the executors/attorneys, noted the safeguard

that any claim for services was required to be itemized and approved by the probate court. *Id.* at 51. The court further noted that the representatives accepted the appointment only with the understanding that they would be compensated for their legal services. *Id.*

In the present case, appellee likewise conditioned her appointment as guardian on her ability to also serve the estate as attorney, due to the large amount of litigation in which the estate was involved. The probate court, being familiar with the estate, approved this arrangement in its order appointing appellee as guardian. There were no objections from Henderson or her daughters regarding this arrangement at the time of appellee's appointment. Throughout the course of her service as guardian and attorney for the estate, appellee regularly submitted reports and applications for compensation to the probate court. These reports appear to represent a detailed account of the legal services rendered to the estate. Aware that appellee was acting as both the guardian and attorney for the estate, the probate court reviewed and approved these applications.

Several public policy concerns seem to favor dual compensation. For example, when an estate representative also serves the estate as attorney, the duplication of work is avoided. The representative is already familiar with the estate, so research and review of files is not necessary. The need for lengthy status conferences and strategy meetings between the guardian and the attorney is also unnecessary. Additionally, the major advantage of the general rule is that the guardian is able to review the attorney's fees for reasonableness and propriety. However, in such a situation, the probate court is the true protector of the estate's interests as it conducts the final review of all monies leaving the estate. When the guardian and the attorney are the same individual, a step is avoided and the same result is achieved. Under this approach, probate courts will more closely scrutinize the applications for attorney's fees submitted by representatives

serving in dual capacities, resulting in even greater protection to the estate. Further, the relationships between an attorney and her client and between a guardian and her ward are based on trust. Giving effect to the fiduciary nature of both relationships, we should presume that an individual serving in both capacities would perform her duties in a manner that is in the best interest of the estate. To presume otherwise would undermine the confidence the law has placed in individuals serving in fiduciary capacities.

■ TEX.PROB.CODE ANN. § 32 (Vernon 1980) provides that the "rights, powers and duties of executors, administrators and guardians shall be governed by the principles of common law, when the same do not conflict with the provisions of the statutes of this state." [1] This would appear to mandate the following of the general rule against fiduciaries serving in the dual capacities of estate representative and estate attorney. However, Texas courts have never specifically adopted the common law rule. Further, the reasoning of *Burton* is compelling. When the public policy concerns of the rule against dual compensation are resolved through the objective evaluation of attorney's fees that the probate court provides, the general rule appears to serve little purpose. Therefore, where the court is responsible for reviewing and approving applications for attorney's fees and those applications are required to reflect in detail the services rendered, we hold that it is proper for a qualified individual to be compensated for serving as both representative and attorney for the estate. Appellant's first point of error is overruled.

## 2. Guardian Commission on Trust Distributions

■ In her objection to appellee's final account, appellant objected to payment of the statutory guardian commission based upon trust distributions received by the Henderson estate. Appellant argued that the trust distributions were not to be consid-

1. Section 32 was amended effective September 1, 1993. It is interesting to note that the revised statute is identical to the earlier version except for the omission of the word "guardian". Never-

theless, the earlier version of the statute controls in the present case, as appellee was appointed guardian of appellant's estate in 1989.

ered gross income of the estate in calculating commission under TEX.PROB.CODE ANN. § 665(b) (Vernon 1995) and TEX.PROB.CODE ANN. § 241(b) (Vernon 1980) (now repealed).[2]

The trial court determined, as a matter of law, that it was proper for appellee to be paid a guardian's commission on trust distributions provided that the trust distributions were gross income of the estate. The trial court noted that the stipulated facts before it did not completely address this issue and ordered an evidentiary hearing to determine whether the trust distributions in question were in fact gross income of the estate. As conclusions of law, the trial court determined that:

> Distributions received by Ward from any of the trusts of which Ward is a beneficiary were gross income of the guardianship estate upon which a guardian's fee should be calculated.

> It was proper for the statutory guardian's commission to be paid to Former Guardian while she was Guardian of the estate on distributions received from any of the trusts of which Ward is a beneficiary.

■■■ There is a dearth of case law interpreting what constitutes income of a guardianship estate pursuant to sections 241(b), 665(a), and their predecessors, particularly in terms of trust distributions.[3] However, the general rule to be gleaned from the Probate Code is that a guardian is not entitled to receive commission on the "estate first delivered" or, in other words, from the corpus of the estate. *Matter of Guardianship of Reh-*

*berg,* 745 S.W.2d 435, 436 (Tex.App.—Houston [1st. Dist.] 1988, no writ); *Gilbert v. Hines,* 32 S.W.2d 876, 878 (Tex.Civ.App.—Dallas 1930, no writ). In a guardianship situation, it would appear that if the trust was in place at the time the guardianship was created, then any property or funds in the trust at that time would be considered corpus of the guardianship estate. That is, the ward, though not in possession of the trust res, has equitable title to it. Accordingly, the guardian of the estate would not be entitled to commission on any distribution of the initial trust res as it would not be income to the estate. However, the guardian could receive commission on any income generated by the trust and then distributed to the guardianship estate. In this respect, the trial court correctly stated the law in determining that appellee was entitled to a commission on trust distributions if such distributions were considered gross income of the estate. The question on appeal then becomes whether the distributions were made from the corpus or the income of the trusts in question.

The probate court found that the distributions received by the estate from the trusts were income to the estate. Although labeled a conclusion of law, this is clearly a factual determination as evidenced by the fact that the court ordered an evidentiary hearing to determine the issue. We will therefore liberally construe appellant's point of error as attacking the legal sufficiency of the evidence supporting such a finding. TEX.R.APP.P. 74(p).

---

**2.** Section 241(b) of the Probate Code provides in pertinent part that a guardian of the person and estate shall be entitled to a fee of five percent on the gross income of the ward's estate and five percent on all money paid out. TEX.PROB.CODE ANN. § 241(b) (Vernon 1980) (now repealed). Section 665(a) states that "the court shall set the compensation in an amount not exceeding five percent of the ward's income ... In determining whether to authorize compensation for a guardian under this section, the court shall consider the ward's monthly income from all sources ...". TEX.PROB.CODE ANN. § 665(a) (Vernon 1995).

**3.** It has been determined that a guardian is not entitled to commission on insurance proceeds or pension benefits. *See Gilbert v. Hines,* 32 S.W.2d 876 (Tex.Civ.App.—Dallas 1930, no writ) (war

risk insurance proceeds considered corpus of estate); *Bagwell v. McCombs,* 31 S.W.2d 835 (Tex.Civ.App.—Dallas 1930, no writ) (veteran's disability benefits deemed corpus of estate); *Anderson v. Steddum,* 194 S.W. 1132 (Tex.Civ. App.—Texarkana 1917) (pension benefits held to be corpus of estate), *aff'd,* 222 S.W. 1090 (Tex. Comm'n App.1920, holding approved). In *McCrory v. Wichita County,* 261 S.W.2d 867 (Tex. Civ.App.—Fort Worth 1953, writ ref'd), the court addressed the classification of trust distributions. The court held that the guardian of the trust beneficiary's estate was not entitled to receive commission on proceeds from the sale of real estate which was a part of the initial trust res. *Id.* at 869. The court determined that the proceeds were not income of the trust, but a change in status of a pre-existing trust asset. *Id.*

■ Making the same analogy between estate administrators and estate guardians as made above, there is a presumption in favor of the regularity and legality of the guardian's accounts where the guardian has filed annual reports and procured authority from the court in all proper cases before acting. *See Scott v. Taylor*, 294 S.W. 227, 231 (Tex. Civ.App.—Amarillo 1927, no writ) (holding when administrator acts as a proper fiduciary burden is on contestant to show that transactions were not legal); *see also Garcia v. Garcia*, 878 S.W.2d 678, 680 (Tex.App.—Corpus Christi 1994, no writ); *Gulf Insurance Co. v. Blair*, 589 S.W.2d 786, 788 (Tex. Civ.App.—Dallas 1979, writ ref'd n.r.e.). The record clearly reflects that appellee timely and regularly filed accountings throughout her term as guardian of appellant's estate. These accountings reflect distributions received from the various trusts of which appellant was a beneficiary. The record indicates that all of appellee's accountings were approved by the probate court. The record further reflects that appellee classified distributions received from the trusts as income and included the distributions as part of the basis for her computation of commission in her applications for guardianship fees. These applications were also approved by the probate court.[4] Based upon the record, appellee is entitled to the presumption that her accounts were correctly computed, including the calculation of guardianship fees based upon trust distributions.

■ Appellant contends that the distributions received from the trusts at issue could not be classified as income of the trusts, and therefore, could not be used to compute guardianship fees. Because of the presumption that appellee's accounts and computations are accurate, appellant has the burden of showing that the amounts distributed to her estate from the trusts were distributions of trust corpus rather than trust income. However, appellant offered no evidence at trial to support her contention that the distributions in question were not distributions of trust income. Appellant asked the

trial court to take judicial notice of fiduciary tax law in support of her contention that income listed on a schedule K–1 did not necessarily represent that the amounts listed were trust income. While this may or may not be true, appellant failed to show that the schedule K–1s in this particular case were misleading. Appellant further contends that her right to trust distributions amounts to a chose in action, upon which guardianship fees are unavailable. This is true to the extent that the distributions are made from the trust corpus. *Gilbert*, 32 S.W.2d at 878. However, appellant fails to show that the trust distributions received by her estate did indeed come from the trust corpus.

Appellant correctly acknowledges the distinction between the trust res and trust income, and the fact that guardianship commissions may only be based upon the latter. Yet, appellant has failed to demonstrate that the guardianship fees in this case were calculated on anything other than trust income. Thus, appellant has failed to rebut the presumption that the accountings and applications were accurately calculated. As such, the evidence supports the trial court's finding that the trust distributions in question were gross income of appellant's estate upon which guardianship fees could be calculated. Appellee's second and third points of error are overruled.

### 3. Reimbursement for Attorney's Fees

■ TEX.PROB.CODE ANN. § 666 (Vernon 1995) provides that a guardian is entitled to all necessary and reasonable expenses incurred in performing any duties as guardian of an estate. Reimbursement of attorney's fees from the estate is appropriate if the guardian has faithfully discharged his obligations and the grounds for the litigation are ill-founded. *Moore by Moore v. First City Bank of Dallas*, 707 S.W.2d 286, 287 (Tex. App.—Fort Worth 1986, no writ). However, if the root of the litigation is the fiduciary's negligence or bad faith, reimbursement of attorney's fees for the defense of such litiga-

---

4. It should also be noted that this issue has been presented to the probate court before by one of appellant's daughters. Hatsy Heep filed objections to appellee's accountings in both 1991 and

1992 contesting the calculation of guardianship fees based upon trust distributions to the estate. Both of these attempts failed.

tion is not permitted. *Tindall v. State By and Through Texas Dept. of Mental Health & Mental Retardation*, 671 S.W.2d 691, 693 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.).

The controlling issue in this case then is whether the contests to appellee's actions were ill-founded or baseless. Texas courts seem to have decided such issues in terms of whether the contestant prevailed in the claim against the guardian. *See, e.g., Moore*, 707 S.W.2d at 287 (awarding attorney's fees to guardian where contestant failed to make prima facie case of grounds necessary to for removal of guardian); *Tindall*, 671 S.W.2d at 693 (denying attorney's fees where challenge to guardian's action was upheld); *Dumitrov v. Hitt*, 601 S.W.2d 472, 474–75 (Tex.Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.) (denying attorney fees where guardian was removed for cause); *In re Higganbotham's Estate*, 192 S.W.2d 285, 290–91 (Tex. Civ.App.—Beaumont 1946, no writ) (denying attorney fees where guardian's failure to satisfy duties resulted in litigation).

### a. Defense of Removal and Disgorgement Action

■ In her objections to appellee's final account, appellant objected to charges to the estate for reimbursement of attorney's fees incurred by appellee in defending against Kathleen Henderson's motion to remove appellee as guardian and for disgorgement of attorney's fees. By agreement of the parties, the trial court heard this objection based upon stipulated facts and decided the issue as a matter of law. The court concluded that reimbursement of the attorney's fees was proper. We review the trial court's determination of legal issues de novo. *See Pulido*, 888 S.W.2d at 520.

In March of 1993, Kathleen Henderson, appellant's daughter, filed a motion to remove appellee as guardian of her mother's estate and a motion to prohibit payment of attorney's fees to appellee, seeking disgorgement of the attorney and guardian fees previously paid to appellee by the estate. The basis for Kathleen Henderson's arguments was appellee's supposed breach of fiduciary duty created by her service as both guardian

and attorney for the estate. Appellee retained an attorney to defend her in the removal and disgorgement actions. The disgorgement action was dismissed by the trial court based upon Kathleen Henderson's lack of standing to bring such an action. Appellee resigned as guardian of the estate, rendering the removal action moot. However, appellant's attorney ad litem later filed the bill of review at issue in this appeal, again alleging the impropriety of appellee serving the estate as both guardian and attorney.

Appellant contends that the removal/disgorgement action was not ill-founded and that appellant's estate should not be made to absorb the cost of appellee's attorney's fees in defending it. Appellant further contends that because the basis of the action was appellee's personal misconduct and self-dealing, the attorney's fees could not be considered incurred "in connection with the proceedings and management of the estate" as provided in section 666 of the Probate Code.

Kathleen Henderson's motions were never decided on the merits, so it is difficult to determine conclusively who would have prevailed had the motion been ruled upon. However, as appellee points out, the same issues that were raised in Kathleen's motions were raised in the bill of review and objections to final account that are presently at issue. Those issues were decided by the trial court in favor of appellee. As we have indicated, we find that the trial court's decision on the issues was correct. Therefore, we conclude that appellee is entitled to attorney's fees for fending off those allegations when they were initially brought against her in Kathleen Henderson's motions. Appellant's fourth point of error is overruled.

### b. Defense of Final Account

■ In her sole cross point, appellee argues that the trial court erred in refusing to reimburse her from the Henderson estate for attorney's fees she incurred in defending her final account following her resignation as guardian.

Tex.Prob.Code Ann. § 760(a) requires that upon the resignation of a guardian, the guardian must file a final account. Further,

TEX.PROB.CODE ANN. § 760(b) provides that although a guardian's resignation may be accepted by the court, the guardian is not discharged until final order or judgment is rendered on the final accounting.

Appellee contends that because, as a resigning guardian, she had a legal duty to file a final account, she should be entitled to attorney's fees for defending that account. On the other hand, appellant contends that in defending the final account, appellee was defending her personal right to receive guardian and attorney's fees. Appellant, therefore, reasons that appellee's attorney's fees should not be paid by the estate.

Although the primary basis for all of the contests against appellee and her accounts has been an alleged conflict of interest, the entire final account was contested in the trial below. Therefore, it is difficult to say that appellee's entire defense was personal to her. This is particularly true since appellee was legally obligated to make the accounting and it was not made solely to retrieve additional fees. Appellee's receipt of guardian and attorney fees is the logical result of the court upholding her final account, not the purpose of her defense. Appellee should not be punished for successfully defending the completion of her duties as guardian by being made to absorb the costs when her actions are unsuccessfully contested.

The trial court's decision on this point is difficult to justify given its determination that appellee could recover attorney's fees for defending herself in the removal and disgorgement actions brought by Kathleen Henderson. As discussed above, the same issues were raised in the bill of review and objections to final account as were brought in Kathleen Henderson's motions. We can not conclude that a guardian is entitled to attorney's fees for defending an action brought against her personally and then, is not entitled to attorney's fees for defending an accounting she was required by law to prepare. The trial court seems to confuse resignation with discharge. Attorney's fees may be incurred and paid past resignation but before discharge. In preparing and defending her final account, appellee was clearly performing her duties as guardian of the estate as

she had not yet been discharged from her duties as guardian pursuant to section 760(b). We therefore hold that appellee is entitled to be reimbursed for attorney's fees she incurred in defending her final account. Appellee's cross point is sustained.

### 4. Expert Witnesses

Prior to trial, appellant, in her interrogatories, asked appellee to "identify each person who may be called by you as an expert witness, the subject matter on which the expert is expected to testify, and the date the expert was employed." In response, appellee identified Donna Kay McKinney, Chris Heinrichs and two other individuals. Appellee indicated the subject matter regarding which each expert was expected to testify and further indicated that none of the experts had been formally retained at that time. Appellee also designated McKinney and Heinrichs in her response to an interrogatory requesting the identification of all persons with knowledge relevant to the facts of the case.

At trial, appellant objected to the testimony of McKinney and Heinrichs based upon the fact that appellee's interrogatory answers were ambiguous and misleading. Appellant contends that because appellee indicated that her experts had not been formally retained, she was led to believe that the experts would have no connection with the case until they were retained. Appellant contends that appellee had a duty to supplement her answers to interrogatories in order to notify appellant that the experts had been retained. Appellant argues that because appellee did not supplement her answers to indicate that the experts had in fact been retained, appellant did not believe they would testify and did not arrange to take their depositions. As such, appellant contends that the trial court erred in allowing McKinney and Heinrichs to testify.

TEX.R.CIV.P. 166b(6) mandates that a party supplement responses to interrogatories with the name, address and telephone number of the expert, and with the substance of the testimony regarding which the expert is expected to testify when such information has not been previously disclosed in response to

a proper request. This duty arises when the responding party becomes aware that a response was incorrect when made or has become incorrect since the response was made and failure to supplement would be misleading. TEX.R.CIV.P. 166b(6)(a). TEX.R.CIV.P. 215(5) provides that a party who fails to respond to or supplement his response to a request for discovery pursuant to Rule 166b shall not be entitled to present the evidence which the party was under a duty to provide unless the trial court finds good cause sufficient to require admission.

Appellant contends that appellee's failure to supplement her responses was substantially misleading pursuant to Rule 166b(6)(a) and that, therefore, the trial court was in violation of Rule 215(5) in allowing the contested testimony. On the other hand, appellee contends that she was under no duty to supplement her answers with the date that her experts were retained because such information was irrelevant. Appellee insists that she did all that the rules required in identifying her experts. Appellee provided appellant with the name, address and phone numbers of all of the experts she anticipated calling. As such, appellant was clearly on notice that appellee might call up to four witnesses, including McKinney and Heinrichs, and about what those witnesses would be called to testify.

 Several Texas cases deal indirectly with this issue. In *Barker v. Dunham*, 551 S.W.2d 41 (Tex.1977), the Supreme Court held that as long as a party has not positively averred that the experts in question will be used solely for consulting purposes or will not testify at trial, the witness is open to full discovery. *Id.* at 44. In *Baylor Medical Plaza Services Corp. v. Kidd*, 834 S.W.2d 69 (Tex.App.—Texarkana 1992, writ denied), the court held that the rules of discovery do not exempt listing an expert just because he had not been retained. *Id.* at 73. Accordingly, the fact that a witness has been retained or not is irrelevant for purposes of discovery. This invalidates appellant's assertion that she was misled into not taking depositions because she was not notified that appellee's witnesses had been formally retained.

 The general purpose of discovery rules is to prevent trial by ambush. *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex.1992). We find no ambush in this situation. Appellee adequately identified all of the potential expert witnesses in the case. A witness may testify at trial where she was not identified as a potential witness but was clearly identified as an individual having knowledge of relevant facts. *Rogers v. Stell*, 835 S.W.2d 100, 101 (Tex.1992); *Smith v. Southwest Feed Yards*, 835 S.W.2d 89, 91 (Tex.1992). McKinney and Heinrichs were disclosed as potential experts and also as individuals with personal knowledge of relevant facts of the case. As such, the trial court did not abuse its discretion in allowing them to testify. Appellant's fifth point of error is overruled.

### 5. Sufficiency of the Evidence

#### a. Standard of Review

 In considering a legal insufficiency point, we consider only the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988). If there is more than a scintilla of evidence to support the finding, the no evidence challenge must fail. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex. 1987).

 In considering a factual sufficiency point, we may not substitute our judgment for that of the trier of fact, but must assess all the evidence and reverse for a new trial only if the challenged finding shocks the conscience, clearly demonstrates bias, or is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Under this analysis, we are not fact finders and we do not pass upon the credibility of witnesses or substitute our judgment for that of the trier of fact, even if there is conflicting evidence upon which a different conclusion could be supported. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

### b. Final Account

In appellant's sixth and seventh points of error, she argues that the evidence presented to the trial court was factually insufficient to support a finding that the final and prior accounts submitted by appellee were true and correct. Appellant insists that appellee's accounts contain numerous accounting errors and defects. The trial court, however, determined that appellant's bill of review and objections to the final account were without merit.

At trial, appellant offered the testimony of Sandra Schiffer, a certified public accountant. Schiffer testified that based upon her analysis of the original source documents and the accounts in question, appellee's accounts were inaccurate. Schiffer testified regarding her method of reviewing the accounts and the preparation of her work papers. Appellee testified herself regarding her belief that the accounts at issue are true and correct. Appellee also offered the testimony of Donna Kay McKinney, a former probate court auditor.

Appellant contends that because McKinney did not spend as much time analyzing the accounts in preparation to testify and did not prepare the detailed work papers the Schiffer prepared, Schiffer was a more convincing and competent witness. As such, according to appellant, the evidence provided by appellee and McKinney is factually insufficient to support a finding that the accounts were true and correct.

However, as appellee notes, the two witnesses did not approach the analysis of the accounts on equal footing. Schiffer was first confronted with Henderson's estate when she was retained as an expert witness. She testified that she had never done probate accounting prior to analyzing these accounts. On the other hand, McKinney was extremely familiar with the Henderson estate, having prepared several of the estate's accountings herself and having audited the ones she did not prepare. Also, McKinney had at least 8 years of experience in probate accounting and in probate court policy and procedure.

Much of the testimony regarding the accuracy of the accounts at issue centered around accounting classifications. McKinney and Schiffer disagreed about the proper procedure to be used in classifying income and disbursements. As such, their opinions regarding the final numbers in the accounts differed. The trial court clearly acknowledged this conflict in testimony and chose to rely on the testimony of McKinney. It appears that the testimony of both experts was credible. However, in light of McKinney's probate accounting experience, it was not unreasonable for the court to favor her testimony. Appellants sixth and seventh points of error are overruled.

### c. Final Application for Guardian Fees

In her eighth and ninth point of error, appellant contends that the evidence is both legally and factually insufficient to support a finding that appellee correctly calculated her guardian fees. Appellant contends that in all of appellee's accountings and applications for guardianship fees, she overstated her compensation base in calculating her commissions. The trial court rejected appellant's contentions and determined that appellee's guardianship fees were correctly calculated.

First, appellant contends that because appellee offered no computational evidence that her guardianship fees were correctly calculated, the evidence is legally insufficient to support the court's finding. However, appellee presented her own testimony and the expert testimony of Donna Kay McKinney that the accounts prepared for the estate were accurately calculated, including those portions of the accountings referencing guardianship fees. We find that this testimony is sufficient to overcome appellants legal sufficiency challenge. *See Stafford*, 726 S.W.2d at 16.

Appellant further insists that the evidence submitted at trial was factually insufficient to support the trial court's finding because Sandra Schiffer's testimony and analysis was more comprehensive than that of McKinney. Schiffer testified that the accounts and applications for guardianship fees were inaccurate, while McKinney testified that the accounts and applications were correctly computed. Again, the trial court

chose to rely on the testimony presented by appellee in finding that the guardianship fees were correctly calculated. In light of the conflicting testimony, this conclusion was not manifestly unjust. *See Pool,* 715 S.W.2d at 635. Appellant's eighth and ninth points of error are overruled.

### d. Application for Additional Compensation

■ In her tenth point of error, appellant complains that the court erred in awarding appellee additional compensation because the evidence is legally insufficient to support the finding that appellee spent additional time and effort on behalf of the estate and that the statutory compensation was unreasonably low.

In its January, 1994, order for fee instruction, the probate court directed appellee to file an application for additional guardianship fees in lieu of filing an application for attorney's fees to receive compensation for unpaid legal services rendered to the estate in the Travis County litigation. In response, appellee filed an application for additional guardianship compensation for her activities from August through December of 1993 relating to the Travis County litigation. Appellant objected that the payment of the additional fees was excessive. The trial court, however, determined that appellant had expended additional time and effort from August, 1993, to December, 1993, on the litigation, and that the statutory compensation for her services was unreasonably low. The trial court authorized payment of additional fees of $12,997.50.

TEX.PROB.CODE ANN. § 665(b) provides that the court may authorize reasonable compensation to the guardian for her services where the guardian's statutory percentage fee is an unreasonably low amount in light of the services rendered. Appellant contends that appellee presented no competent evidence to prove that she had devoted additional time or effort to the estate or that her compensation was unreasonably low during the relevant period.

However, the record reflects that appellee did testify regarding the additional time and effort she spent representing the estate in a legal capacity in the Travis County litigation. She testified that she spent 86.65 hours representing the estate as an attorney in the case. She testified that her usual hourly rate as an attorney was $150.00. In her motion for fee instruction, which was before the court, appellee indicated exactly what types of legal work she had done for the estate, including drafting pleadings and discovery documents, legal research, and court appearances. She further testified that she spent one-third of her professional time tending to matters regarding the estate, much more time than she would have spent had she been performing only her duties as guardian. Additionally, Joyce Moore, the estate's lead counsel in the Travis County litigation, testified regarding the extent of appellee's legal services in the litigation. Based upon the record and the testimony, the trial court's decision to award appellee additional compensation was clearly supported by the evidence. Appellant's tenth point of error is overruled.

### e. Final Application for Attorney's Fees

■ In her eleventh through thirteenth points of error, appellant contends that the evidence is factually insufficient to support the finding that the fees sought in appellee's final application for attorney's fees were reasonable and necessary. Appellant insists that appellee's applications for attorney's fees are improper because they seek fees for performing activities that should have more properly been performed in appellee's capacity as guardian and for work that duplicated the efforts of Joyce Moore. The trial court found that the evidence presented was sufficient to sustain the award of attorney's fees set out in the final account and application, with the exception of $1,067.50, which the court determined was erroneously charged to the estate.[5]

Linda Goehrs testified for appellant at trial. Goehrs is an experienced probate attor-

---

5. At trial, appellee admitted that she had mistakenly charged the estate for 6.95 hours of attorney time. Appellee indicated that the 6.95 hours had actually been spent in her capacity as guardian.

ney, specializing in guardianship matters. Goehrs testified that she had reviewed appellee's applications for attorney's fees and concluded that the fees sought were unreasonable and unnecessary. Goehrs testified that she had conducted an in depth review of all of the relevant documents in both the guardianship and the Travis County litigation. She color coded and annotated all of appellee's fee statements to determine whether the statements reflected appellee's work as an attorney or as a guardian. Goehrs concluded that appellee had charged the estate for attorney time when the activity reported had no actual legal significance. Goehrs also reviewed the fee statements of Joyce Moore in the Travis County litigation. Following this review, Goehrs testified that appellee often duplicated the work of Joyce Moore in her representation of the estate.

On the other hand, appellee testified that at the time of her appointment, the estate was involved in several lawsuits which required her attention as an attorney. She testified that she became involved in the various suits in order to ensure that the estate was adequately represented. She testified regarding the legal duties she performed, including participation at hearings and settlement negotiations, participation in arbitration, presentation of settlement agreements to the probate court, collecting delinquent accounts for the estate, handling investment, tax, and real estate matters, and monitoring litigation. She further testified regarding her participation in a legal capacity in the Travis County litigation. Joyce Moore also testified regarding appellee's involvement in the Travis County litigation. Moore testified that appellee's legal services were necessary in the litigation and that her attorney's fees were warranted. Appellee also called Chris Heinrichs to testify. Heinrichs is a board certified attorney in taxation, estate planning and probate. Heinrichs testified that the fees claimed by appellee are reasonable and necessary based upon his discussions with appellee and his review of her applications for attorney's fees.

Clearly, the evidence regarding the propriety of appellee's attorney's fees was sharply divided. Accordingly, we must defer to the trial court's assessment of the credibility of the various witnesses. *See Pool,* 715 S.W.2d at 635. In this case, the evidence is sufficient to support the trial court's conclusion that appellee's attorney's fees were reasonable and necessary. Appellant's eleventh, twelfth, and thirteenth points of error are overruled.

## CONCLUSION

The orders of the trial court denying Attorney Ad Litem's Second Amended Bill of Review; approving Guardian's Final Account, with the exception of the sum of $1,067.50; authorizing payment of guardianship fees; authorizing payment of additional compensation; and authorizing payment of attorney's fees and expenses are affirmed. The order of the trial court denying appellee reimbursement for attorney's fees incurred in defending her final account is reversed and remanded to the trial court for a determination of the amount of fees incurred by appellee in connection with the defense of her final account from the date such account was filed to the date appellee is formally discharged from her duties as guardian of appellant's person and estate.