TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00067-CV






August Meduna, Jr., Appellant


v.


Ruth Holder, Guardian of the Person and Estate of Minnie Meduna, N.C.M., Appellee







FROM THE COUNTY COURT AT LAW OF BASTROP COUNTY

NO. G-33, HONORABLE MERCER BENTON ESKEW, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 August Meduna, Jr. appeals from a judgment awarding attorney's fees to his sister,
Ruth Holder, the guardian of the person and estate of their mother, Minnie Meduna. Appellant
complains that the county court at law erred by awarding attorney's fees to Holder for work
performed regarding an unrelated lawsuit that was filed and dismissed before she was appointed
guardian, performed without advance court approval, and unrelated to the guardianship. We will
affirm the judgment.


BACKGROUND


 On June 18, 1999, Holder applied to be appointed the guardian of the eighty-nine-year-old Minnie Meduna. Holder asserted that Minnie Meduna was dependent on round-the-clock
care and was unable to manage her affairs. Negotiations among Holder and her siblings ensued, as
did lawsuits pertaining to the family's property. The trial court held a hearing on the guardianship
application on October 29, 2001 at which Minnie Meduna stated that she did not wish to have a
guardian appointed. On November 6, 2001, the court signed an order granting Holder's application.

 On December 13, 2001, Holder filed an application for reimbursement and payment
of attorney's fees. In the application, she asserts that she hired a lawyer on March 5, 1999 to begin 
"working out family issues relating to her father's death and her own care of her mother." She
attached many documents and billing statements to the unsworn application. Six days after filing
the application, Holder filed an affidavit in support of her request; she verified that she incurred the
amount of fees claimed in her application--$13,659.40 paid and $8,764.20 incurred but unpaid. She
swore that these fees were reasonable, necessary, and related to the guardianship application and
related events like court appearances and mediations. She verified that the expenses were incurred
in pursuing the best interests of Minnie Meduna.

 August Meduna objected to the application. He complained that the billing
statements attached to the application showed that the majority of the time for which fees were
requested was devoted to an unrelated declaratory-judgment action regarding a gift deed by which
their parents gave a life estate in certain property to Holder; he noted that the lawsuit was dismissed
without an award of attorney's fees. He complained that other requested fees were for work
pertaining to an application for probate of their father's will. Finally, he argued that Holder's
attorneys could not be paid by their mother's estate for work performed before Holder was appointed
guardian and complained that Holder's attorney's work was not pre-approved by the court. He also
complained that omissions from the billing statements made determining the necessity and
reasonableness of some of the fees difficult.

 The county court at law awarded ninety percent of the attorney's fees requested. The
court found that the attorney's fees requested were reasonable and just. The court also found that
the expenditures for the declaratory-judgment action, the probate of the estate of August Meduna,
Sr., and the guardianship were inextricably intertwined, at least since the declaratory-judgment action
was refiled in the probate court following the district court's dismissal of it. Accordingly, the court
ordered that Holder use funds belonging to Minnie Meduna to pay her attorney $7,887.78 and to
reimburse herself $12,293.46 for attorney's fees paid to her attorneys.


DISCUSSION


 Appellant contends that the county court at law erred by awarding the attorney's fees. 
He argues that the county court at law lacked power to award attorney's fees and expenses from the
guardianship estate's assets because the fees were incurred before the appointment of the guardian
and were for work not related to the guardianship and not pre-approved by the court.

 We begin with appellant's threshold challenge to the sufficiency of Holder's
application for payment of attorney's fees. Appellant complains for the first time on appeal that
Holder's application was deficient because it was not verified. See Tex. Prob. Code Ann. § 667
(West Supp. 2003). That section requires that all expense charges be "(1) in writing, showing
specifically each item of expense and the date of the expense; (2) verified by affidavit of the
guardian; [and] (3) filed with the clerk . . . ." Id. Section 667 does not specify that the guardian's
verifying affidavit be filed at the same time as the application. See id. Holder's application was
unverified when filed, but she filed an affidavit six days later verifying that the amounts requested
in the application were expended in the guardianship application process. Together, the application
and affidavit satisfy the requirements of Probate Code section 667.

 Holder's application cited Probate Code sections 665B and 666. See Tex. Prob. Code
Ann. §§ 665B, 666 (West Supp. 2003). Section 665B provides that: 



 A court that creates a guardianship for a ward under this chapter, on request of
a person who filed an application to be appointed guardian of the proposed
ward, may authorize compensation of an attorney who represents the person at
the application hearing, regardless of whether the person is appointed the ward's
guardian, from:


 


 
 available funds of the ward's estate; or

 [if no estate funds, then county funds, if available] 

 
 The court may not authorize compensation under this section unless the court
finds that the applicant acted in good faith and for just cause in the filing and
prosecution of the application.




Id. § 665B. (1) Section 666 provides as follows:



A guardian is entitled to be reimbursed from the guardianship estate for all necessary
and reasonable expenses incurred in performing any duty as a guardian, including
reimbursement for the payment of reasonable attorney's fees necessarily incurred by
the guardian in connection with the management of the estate or any other
guardianship matter.



Id. § 666. (2)

 We review a court's award to a guardian of attorney's fees related to the guardianship
application for an abuse of discretion. See Moore v. First City Bank of Dallas, 707 S.W.2d 286, 288
(Tex. App.--Fort Worth 1986, no writ) (fees incurred defeating challenge to guardianship); see also
State v. Ellison, 914 S.W.2d 679, 683 (Tex. App.--Austin 1996, no writ)(same); cf. Simon v. York
Crane & Rigging Co., Inc., 739 S.W.2d 793, 794 (Tex. 1987) (guardian ad litem fees). Appellant
argues that the decision is a matter of law, based on Henderson v. Viesca. 922 S.W.2d 553, 561
(Tex. App.--San Antonio 1996, writ denied). That case, however, was tried on stipulated facts. See
id. at 557. Here, the facts are not stipulated and there is no question of statutory interpretation. The
common thread in appellant's three issues is whether the trial court correctly characterized the nature
of the guardian's attorney's actions.

 A trial court abuses its discretion when it acts arbitrarily and unreasonably, without
reference to guiding rules or principles, or when it misapplies the law to the established facts of the
case. Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241 (Tex. 1985). We must review the evidence in the light most
favorable to the action of the trial court, and cannot substitute our judgment for that of the trial court
as long as the trial court did not abuse its discretion. Ellison, 914 S.W.2d at 682. 

 Appellant contends that Holder sought and was awarded fees incurred for purposes
other than the guardianship application. He complains that fees were awarded for work related to
the estate before Holder was appointed guardian; (3) he contends that, because the statute does not
permit recovery for expenses by nonguardians doing work as guardians, Holder cannot recover for
expenses she incurred for work relating to the estate before she became a guardian. Appellant also
complains that fees were awarded for work done relating to a deed challenge and to the probate of
their father's will. He further contends for the first time on appeal in his reply brief that the award
compensates Holder for work done for her personally that conflicts with the interests of the estate.

 Based on the record before us, we cannot conclude that the district court abused its
discretion by its attorney's fees award to Holder. Holder's application for attorney's fees describes
the events surrounding the guardianship application procedure and its interaction with other family-related legal work. Attached to the fees application are letters written by the attorney and billing
statements. The billing statements include redactions of subject lines which Holder's attorney
testified were made to protect attorney-client privilege. The billing statements also contain subject
lines that allude to probate proceedings. Holder averred in her affidavit that the fees she paid 


represented reasonable and necessary expenses in respect to matters relating to my
application for guardianship of Minnie Meduna. . . .


Additional fees incurred in the course of the guardianship application, court
appearances and mediations are also shown on attachments to the application. I
verify that these expenses were reasonably and necessarily incurred in pursuing the
best interests of Minnie Meduna.



Holder's attorney testified that he did not and could not segregate his work on the guardianship
application from his representation of her on all matters because all the aspects of his representation
of Holder were inextricably intertwined. Appellant contended strenuously at the hearing that the
billing statements reveal easily segregable items and that Holder's attorney declined his request to
segregate their dealings on the cases. The county court at law, however, stated at the close of the
hearing that "based on the time that was spent in court and the time that the Court has actually spent
in overseeing this case, that the percentage [of time devoted to the application as opposed to other
matters] is 90 percent to 10 percent." The court memorialized this finding in its order.

 Viewing the evidence most favorably to the judgment, we cannot conclude that the
trial court acted arbitrarily or unreasonably in making this finding or the award of attorney's fees.


CONCLUSION


 Having resolved the issues on appeal in favor of the judgment, we affirm the
judgment. 


 

 Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed

Filed: January 16, 2003

1. This is the text of the statute effective September 1, 1999. The omitted subsection,
pertaining to the availability of funds from the county to pay attorney's fees, is inapplicable here; it
was the only substantive change from the previous law. See Act of May 20, 1999, 76th Leg., R.S.,
ch. 905, § 2, 1999 Tex. Gen. Laws 3604, 3605.
2. This is the text of the statute effective September 1, 2001. The 2001 amendment added the
clause beginning midway through the statute with the word "including." See Act of May 23, 2001,
77th Leg., R.S., ch. 953, § 2, 2001 Tex. Gen. Laws 1909, 1910.
3. His argument that fees were awarded for pre-application expenses is based in part on an
incorrect assertion that Holder applied to be guardian on October 29, 2001. The clerk's record
reflects that Holder filed her application on June 18, 1999.